UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                   :
SUSAN LASK,                                        :
                                                   :        24-CV-2666 (MMG) (RWL)
                              Plaintiff,           :
                                                   :
            - against -                            :        **ORDER and REPORT AND**
                                                   :        **RECOMMENDATION TO**
MARGARET RHEE-KARN,                                :        **HON. MARGARET M. GARNETT**
and DOUGLAS R. DOLLINGER,                          :
                                                   :
                              Defendants.          :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       This Order and Report and Recommendation addresses several motions and is

the latest chapter in an ongoing feud between two attorneys.  Plaintiff Susan Lask, acting

as both Plaintiff and co-counsel, filed this action in New York State Supreme Court,

alleging that Defendants, attorney Douglas R. Dollinger, and his client, Margaret Rhee-

Karn, libeled Lask to one of her clients and thus interfered with that business relationship.

Defendants, who are both New York citizens, removed the action to this Court on the

basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441, 1446, and 1447.

       Lask then moved to remand the case back to state court arguing that Defendants

had not met their burden to demonstrate diversity of the parties and that, in any event,

remand was required under the forum-defendant rule, 28 U.S.C. § 1441(b)(2), which

prohibits removal when one of the defendants is a citizen of the forum state and has

already been served with process.  Lask also argued that removal was prohibited

because Dollinger is both a co-defendant and Rhee-Karn's attorney and thus has a

conflict of interest preventing him from consenting to removal on behalf of Rhee-Karn.

And, Lask asserted that the Notice of Removal was defective as it did not attach the affidavits of service of process Lask filed with the state court prior to removal.

On September 3, 2024, this Court issued a Report and Recommendation (the "R&R") recommending that the case be remanded to state court because Defendants failed to satisfy their burden to demonstrate that the Court has diversity jurisdiction. (Dkt. 28.) As the R&R explained, Defendants' Notice of Removal did not establish diversity because it did not identify Lask's state of citizenship. Instead, it merely asserted that Lask was not a citizen of New York and was a citizen of either New Jersey or Florida. Yet, the only address the Notice of Removal provided for Lask was her New York business address. Although Defendants asserted that Lask had admitted in court filings that she was not a citizen of New York, Defendants did not submit any such filings with their opposition to remand. (*See* Dkt. 28 at 10-13.) Nor did Defendants request an opportunity for jurisdictional discovery.

After entry of the R&R, objections and a flurry of motion practice followed. On September 17, 2024, Lask filed a limited objection requesting that costs and fees of remand be imposed against Defendants pursuant to 28 U.S.C. § 1447(c). (Dkt. 30.) Defendants filed objections the same day. (Dkt. 29.) Defendants generally rehashed earlier arguments or made new arguments that should have been presented earlier but were not, and none of which warranted a different outcome at the time the R&R issued.[1]

---

[1] For instance, Defendants claim that, before the R&R issued, they were entitled to a hearing on the issue of Lask's domicile. (Dkt. 29 at ECF 17.) As the R&R explained, however, Defendants had not requested the opportunity for jurisdictional discovery, and circumstances did not warrant it. (Dkt. 28 at 14-15.) Defendants similarly allege error in that they should have been given the opportunity to amend their Notice of Removal or file a sur-reply in opposition to remand. (Dkt. 29 at ECF 17-19.) But, as the Court reasoned,

Defendants did, however, assert one particularly salient argument based on developments *after* the R&R issued: that Defendants newly discovered a verified complaint that Lask filed in federal court in the Eastern District of New York in which she avowed that she was and had been domiciled in the State of Florida for the relevant time period (the "Verified Complaint").  Lask filed a memorandum in opposition to Defendants'

---

there was no basis to grant leave to amend the Notice of Removal because Defendants did not offer any new information that would have made a difference and did not even attempt to explain how they would have amended the Notice.  (Dkt. 28 at 14.)  As for a sur-reply, the Court denied Defendants' request for leave to file on June 10, 2024.  (Dkt. 24.)  Other than claiming in conclusory fashion that Lask's reply in support of remand contained inflammatory assertions, Defendants' request offered nothing specific that would merit a sur-reply.  The new evidence on which they now rely for reconsideration of the R&R was not available until approximately a month later, July 9, 2024, when Lask filed her verified complaint in another case that underlies much of the current set of motions and which is discussed below.

Defendants also newly raise the argument that the Court should have considered the fact that, upon appearing in this court to challenge removal, Lask did not file a statement of her citizenship pursuant to Federal Rule of Civil Procedure 7.1 ("Rule 7.1"). That rule requires that in cases based on diversity jurisdiction, "a party … must … identify the citizenship of … every individual or entity whose citizenship is attributed to that party," and must do so at the time the action is "filed in or removed to federal court."  Fed. R. Civ. P. 7.1(2).  Defendants did not advance their Rule 7.1 argument before this Court issued the R&R, and therefore cannot assert that argument as a basis to object or request reconsideration.  *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15-CV-2739, 2023 WL 3625784, at *1 (S.D.N.Y. May 24, 2023) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court") (quotation marks and citation omitted); *Aquino by Convergent Distributors of Texas, LLC v. Alexander Capital, LP*, No. 21-CV-1355, 2023 WL 2751541, at *1-2 (S.D.N.Y. Mar. 31, 2023) (denying reconsideration and stating that presentation of new arguments not made previously "is not the purpose of motions for reconsideration"); *Uppal v. Western Express, Inc.*, No. 15-CV-9976, 2019 WL 1434234, at *2 (S.D.N.Y. Apr. 1, 2019) ("new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all") (quoting *Razzoli v. Federal Bureau of Prisons*, No. 12-CV-3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014).  Although Defendants cannot stand on Lask's failure to file a Rule 7.1 statement as a basis for reconsideration, the argument is germane to consideration of their motion for sanctions against Lask; and, as discussed further below, Defendants may rely on the Rule 7.1 disclosure statement Lask later filed at the Court's direction after the parties briefing for the instant motions was completed.

objections.   (Dkt. 43.)  Likewise, Defendants filed a memorandum in opposition to Lask's objections, but additionally "cross-moved" for sanctions that would impose fees and costs and strike Lask's motion to remand, primarily on the basis that Lask had concealed her state of domicile and deceived the Court.  (Dkt. 32.)

Defendants filed yet another motion on October 1, 2024, requesting that the R&R be modified and amended pursuant to Fed. R. Civ. P. 60(b)(2) based on the discovery of new evidence.  (Dkt. 34.)  Lask filed an opposing brief on December 20, 2024.  (Dkt. 44.) Four days later, Lask filed a brief opposing Defendants' motion for sanctions.  (Dkt. 47.) Then, on January 7, 2025, Defendants filed a brief and affidavit in support of Defendants' "Rule 59(e) & 60(b)(2)" motion for relief from the R&R.  (Dkt. 53.)  The following day, Lask filed a letter motion seeking to strike Defendant's 60(b)(2) motion and affidavits filed in support at Dkt. 34 and 53.  (Dkt. 54.)  On January 9, 2025, Defendants filed a responding letter.  (Dkt. 55.)

District Judge Garnett referred the motion to remand to me for report and recommendation (Dkt. 15), and has since also referred Defendants' cross-motion for sanctions.  (Dkt. 35.)  The motions at Dkt. 34, 53, and 54 are ones that I may resolve by orders as they all stem from Defendants' motion that I reconsider the R&R due to newly discovered evidence.   The instant order now resolves those motions.   Upon reconsideration, the accompanying Report and Recommendation recommends that Lask's motion to remand be denied and that Lask be sanctioned for deceiving the Court and unnecessarily multiplying proceedings.

The analysis below proceeds in four parts.  The Court begins with Lask's motion to strike as the outcome affects the record before the Court.  Second, the Court addresses

Defendants' motion for reconsideration based on new evidence.  Third, the Court reassesses Lask's motion to remand in light of the new evidence presented.  Last, the Court considers Lask's demand for fees and Defendants' cross-motion for sanctions.

## I.

### Lask's Motion To Strike (Dkt. 54)

Lask asks the Court to strike three items:  Defendants' motion pursuant to Rule 60(b)(2), and two affidavits from Defendant Dollinger.  The motion is granted in part and denied in part.

**1.    Motion To Strike Rule 60(b)(2) Motion:**  Lask's motion to strike Defendants' Rule 60(b)(2) motion is premised on her argument that this Court may not reconsider its R&R recommending remand.  (Dkt. 54 at 2.)  As explained below, that argument is unavailing.  Accordingly, Lask's motion to strike Defendants' Rule 60(b)(2) motion is denied.

**2.    Motion To Strike Affidavit At Dkt. 34-1:**  Lask argues that the Dollinger Affidavit – which describes and includes as an exhibit Lask's Verified Complaint from the Eastern District of New York – in support of Defendants' Rule 60(b)(2) motion should be stricken because it improperly includes legal argument in violation of Local Rule 7.1(3). (Dkt. 54 at 2.)  Local Rule 7.1 sets forth the papers required to be filed with a motion.  One of the requisite filings is an affidavit "containing any factual information … necessary" for deciding the motion.  Even if proper practice is to put legal argument in briefs and factual evidence in affidavits, Lask does not cite any authority that Rule 7.1 warrants striking affidavits that contain legal argument as well as factual material.  Lask also argues that the affidavit should be stricken because it violates Local Rule 6.3 which prohibits filing of

affidavits in support of motions for reconsideration.  (Dkt. 54 at 3.)  The Court finds no basis to strike the affidavit but, in an exercise of its discretion, has considered only the portion of the affidavit addressing and attaching Lask's Verified Complaint.  Even if the Court were not to consider the affidavit at all, it can and would still take judicial notice of the Verified Complaint.  Accordingly, Lask's motion to strike the Dollinger Affidavit at Dkt. 34-1 is denied.

3.    **Motion To Strike Affidavit At Dkt. 53:**  Lask makes the same unavailing arguments to strike the Dollinger Affidavit at Dkt. 53.   However, she advances an additional argument that does have merit.  On December 26, 2024, the Court issued an order granting Defendants' request to file a 7-page reply addressing all of their various motions then pending.  (Dkt. 50.)  Defendants did not comply with that page limitation. Instead, they filed a 7-page memorandum and a 6-page affidavit from Dollinger, making a total of 13 pages in reply.  Accordingly, the Dollinger Affidavit at Dkt. 53, which largely overlaps the content of the accompanying 7-page memorandum, is deemed stricken.

## II.

## Defendants' Motions To Reconsider (Dkts. 34, 53)

Defendants ask the Court to modify or amend its R&R based on newly discovered evidence and Lask's lack of candor with the Court.  The request is granted.  The Court will consider the new evidence, and, after further analysis, concludes that the case should ***not*** be remanded.  The Court first addresses the relevant facts and timeline of events, followed by the applicable legal standard for reconsideration and the ensuing analysis.

A.    **Relevant Facts**[2]

As noted above, Defendants' basis for removal was diversity jurisdiction resulting from their being citizens of New York while Lask "is [a] citizen of New Jersey or Florida and admits in court filings she is not a citizen or resident of New York." (Dkt. 1 at ECF 3.) Lask argued that Defendants had not met their burden to demonstrate diversity because her citizenship could not be discerned from the summons with notice she filed in state court (the "Summons"). This Court agreed that Defendants had not met their burden because they did not identify Lask's specific state of citizenship and provided only a New York business address for her.

The relevant sequence of events begins when Lask commenced her case by filing the Summons in state court on February 2, 2024. (Dkt. 1-1.) The Summons asserted claims, inter alia, for libel and intentional interference with prospective economic relations based on a text message sent by Rhee-Karn on February 6, 2023. (*Id.* at 2.) On April 9, 2024, Defendants filed their Notice of Removal. Lask moved to remand on May 10, 2024, and briefing was completed by June 7, 2024.

On July 9, 2024, unknown to the Court, Lask commenced an action in the Eastern District of New York by filing her Verified Complaint (the "EDNY Action"). *See Lask v. Fallon*, No. 24-CV-4751, Dkt. 1 (E.D.N.Y July 9, 2024.). In her Verified Complaint Lask avowed that she is a "natural person domiciled in the State of Florida" and had been at "all times" mentioned in the Verified Complaint, extending back as far as January 2023.

---

[2] The facts in this section will be supplemented by additional facts germane to particular issues discussed below.

(*Id.* ¶¶ 1, 8.)  On September 3, 2024, still unaware of Lask's Verified Complaint, the Court issued its R&R recommending remand.

Four days later, September 7, 2024, Defendants became aware of the EDNY Action and Lask's Verified Complaint.  (Dkt. 61 ¶ 2.)  That day, one of Dollinger's clients, searching for information relevant to another case, informed Dollinger that Lask had recently filed a case suing an attorney.  (*Id.* ¶¶ 4-5.)  Dollinger then conducted a search of the federal courts electronic case filing system and found Lask's EDNY Action.  (*Id.* ¶ 6.)

On September 9, 2024, six days after the Court issued its R&R, Lask filed an Amended Complaint in the EDNY Action.  (EDNY Action Dkt. 7.)  Perhaps recognizing the consequence of her admission in her initial Verified Complaint, Lask modified the description of her citizenship so as not to specify her state of citizenship.  The Amended Complaint thus omitted the assertion that Lask was domiciled in the State of Florida at all relevant times and instead asserted vaguely that she is "domiciled out of state."  (*Id.* ¶ 6.)

The parties filed their objections to the Court's R&R on September 17, 2024, and the Court first learned of Lask's admission in her Verified Complaint in the EDNY Action. (See Dkt. 29 at ECF 10-11.)  Defendants then made Lask's admission in the EDNY Action a centerpiece of their cross-motion for sanctions and to strike Lask's motion to remand. (Dkt. 32-1 at 1, 6-8.)  And they did the same in filing their motions for reconsideration of the R&R, arguing that Lask's Verified Complaint in the EDNY Action was newly discovered evidence and that Lask had purposefully concealed her state of citizenship. (Dkt. 34-2 at 1-2, 5-6; Dkt. 53-1 at 1-3, 5-7.)

**B.      Reconsideration Based On New Evidence**

In the wake of the R&R, Defendants filed three separate motions asking the Court to revisit its decision in light of the newly discovered evidence and invoked Federal Rules of Civil Procedure 54(b), 59(e), and 60(b) as the procedural mechanisms to do so.  (Dkt. 32-1, 34, 53-1.)  None of those rules, however, is apt.  Rule 54 applies to judgments and orders from which an appeal lies.  Fed. R. Civ. P. 54(b).  Rule 59(e) addresses motions to alter or amend judgments.  Fed. R. Civ. P. 59(e).  Rule 60(b) concerns relief from a final judgment, order, or proceeding.  Fed. R. Civ. P. 60(b).  A Report and Recommendation is neither an order nor a judgment, let alone a final one.[3]  But that does not mean that the Court may not reconsider its decision in light of new evidence.  *See Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp.3d 774, 788-90 (S.D.N.Y. 2021) (recognizing that parties may request a magistrate judge to reconsider an R&R in addition to lodging objections with the district court judge).

Motions for reconsideration are "addressed to the sound discretion of the district court[.]"  *Mendell ex rel. Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990).  The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter

---

[3] For similar reasons, Lask gains no ground by invoking the non-reviewability rule of 28 U.S.C. § 1447(d).  That portion of the removal statute provides that, subject to exceptions that do not apply here, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."  *Id.*  The rule is inapplicable.  All that has happened so far in the removal process is that this Court issued an R&R recommending remand.  There has been no order of the District Court Judge acting on that R&R, let alone an order of remand.  Section 1447(d) thus does not apply to the current procedural posture.

the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration also "may be granted based upon 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Cunningham v. Cornell University*, No. 16-CV-6525, 2020 WL 1165778, at *1 (S.D.N.Y. Mar. 11, 2020) (quoting *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

A party moving for reconsideration premised upon the discovery of new evidence must be able to point to "evidence that was 'truly newly discovered or could not have been found by due diligence.'" *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012) (quoting *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983)). "A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *United States v. Posada*, 206 F.Supp.3d 866, 868 (S.D.N.Y. 2016) (internal quotation marks omitted).

## C. Lask's Verified Complaint Is New Evidence Warranting Reconsideration

Lask's Verified Complaint in the EDNY Action unquestionably is new evidence of which the Court was not aware. In filing the Verified Complaint, Lask avowed that she was a citizen of Florida during a time period that would establish diversity in the instant case both at the time Lask filed her state court complaint and at the time Defendants removed the action to this Court. (EDNY Action Dkt. 1 ¶¶ 1, 8); *see Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) ("the existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal"); *Marathon CRE 2018-FL1 Issuer, Ltd. v. 257-263 W 34th Street LLC*,

No. 22-CV-1991, 2023 WL 1815195, at *5 (S.D.N.Y. Feb. 7, 2023) ("For cases removed to federal court from state court, diversity jurisdiction is determined at the time of removal"); *Cotto v. Federal National Mortgage Association*, No. 20-CV-6487, 2021 WL 4340668, at *2 (S.D.N.Y. Sept. 22, 2021) ("Where removal is based on diversity jurisdiction, there must be complete diversity both at the time of removal and at the time the state court complaint was filed"); *Vsura v. Ascands*, 84 F. Supp.2d 531, 535-36 (S.D.N.Y. 2000) ("Where removal is predicated upon diversity, a case is not removable unless the parties were diverse not only at the time removal is sought but at the time the state court complaint was filed. … If the record … does not reflect diversity at both stages, removal was improper and the case must be remanded") (internal citations omitted).

Lask attempts to sweep her Verified Complaint aside, arguing that the operative pleading in the EDNY Action is her Amended Verified Complaint that did not include her admission to being a Florida citizen. (Dkt. 44 at 2.) That statement is correct, as far as it goes. "'[A] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission." *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002), *overruled on other grounds by Slayton v. American Express Co.*, 460 F.3d 215 (2d Cir. 2006)). The superseded pleading and statement, however, remain "competent evidence of the facts stated." *United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir. 1991) (internal quotation marks and citation omitted); *Phillips v. City of Middletown*, No. 17-CV-5307, 2018 WL 4572971, at *4 n.3 (S.D.N.Y. Sept. 24 2021) ("While the admissions in the original Complaint may no longer be conclusive judicial admissions, they are nevertheless admissible statements of a party under Federal Rule of Evidence 801(d)(2)"). "A party thus cannot advance one

version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir.1984).

Lask characterizes her original verified statement of Florida citizenship as an "error." (Dkt. 44 at 2.) That is quite disingenuous. Lask filed her amended pleading in the EDNY Action just days after this Court issued its R&R recommending remand based on Defendants not having met their burden to demonstrate diversity. Notably, there is no inconsistency in Lask's assertions of her citizenship in the two pleadings. The Verified Complaint specifies Florida as Lask's state of citizenship. Her Amended Verified Complaint substitutes the vague but entirely consistent assertion that she is not a citizen of New York. (EDNY Action Dkt. 7 ¶ 6.) And, tellingly, none of Lask's filings for the instant motions deny that she is a citizen of Florida.

To determine the matter once and for all, on February 19, 2025, the Court ordered Lask to file a Rule 7.1 Statement disclosing her state of citizenship at both the time she filed the action in state court and at the time Defendants removed it. (Dkt. 56.) Instead of complying with what the Court's order requested – to identify her state of citizenship at the relevant times – Lask filed a Rule 7.1 Statement asserting that she "was **not** a domicile of New York" at those times. (Dkt. 62 at 2 (emphasis added).) Rather than identifying the state of which she was a citizen, Lask identified a state of which she was not a citizen. Given Lask's dissembling, the Court issued another order on March 3, 2025, requiring Lask to file an amended Rule 7.1 Statement providing the correct information under penalty of contempt sanctions if she failed to comply. (Dkt. 63.) Finally, on March 6,

2025, Lask filed a Rule 7.1 Statement confirming that her "state of citizenship … both at the time she filed her action in state court and at the time Defendants filed for removal to federal court was Florida."  (Dkt. 64. at 2.)

Even so, the new evidence of Lask's citizenship alone is not enough to grant reconsideration.  To decide whether reconsideration is appropriate, the Court must determine whether Defendants acted with due diligence in learning of and bringing to the Court's attention Lask's Verified Complaint in the EDNY Action.  There was a 56-day period between the time Lask filed her Verified Complaint on July 9, 2024, and September 3, 2024, when this Court issued its R&R.  But Defendants first learned of the EDNY Action four days **after** entry of the R&R and duly brought it to the Court's attention in the ensuing post-R&R briefing.  Although Defendants did not learn of the EDNY Action in the eight-week period before entry of the R&R, nothing in the record provides a basis to find that Defendants should have been monitoring the EDNY docket for new cases filed by Lask.  Nor, given Lask's challenge to diversity, did Defendants have reason to expect that Lask would file a pleading conceding that she was a citizen of Florida.

Accordingly, the Court finds that Defendants acted diligently and that the requirements for reconsideration based on new evidence have been met.  And, because the record indisputably shows that Lask was a citizen of Florida at the time she filed the case in state court and at the time of removal to this Court, the diversity requirement is met for purposes of removal.[4]  That is not, however, the end of the inquiry.  The existence

---

[4] As set forth in the R&R, Defendants established that the $75,000 monetary threshold for invoking federal diversity jurisdiction has been met inasmuch as Lask's Summons expressly states that Lask seeks damages of $1.1 million, plus interest, costs and attorney fees.  (R&R at 10.)

of diversity means that the Court must go on to consider additional reasons for remand proffered by Lask that were not discussed in the R&R.

### III.

### Lask's Other Arguments Do Not Warrant Remand

Lask posits three main arguments as to why, even if the diversity requirement is met, the case should be remanded to state court: the Defendants are citizens of the forum state (New York); removal was not "unanimous"; and the Notice of Removal is defective. None of those arguments has merit. The Court addresses them in reverse order.

### A.    The Notice Of Removal Is Not Defective

Lask asserts that the Notice of Removal is defective for two reasons.  First, she asserts that the Notice of Removal did not provide a short and plain statement of the grounds for removal.  The Court does not agree.  The Notice of Removal is a concise, four-page document setting forth the required components in short and clear form.  (*See generally* Dkt. 1 at 1-4.)  Lask takes issue with what she characterizes as "numerous ad hominem attacks" appearing in "many paragraphs" of the Notice of Removal.  (Dkt. 17 at 15.)  As best the Court can tell, there are only two paragraphs, out of a total of 17, that potentially reflect poorly on Lask.  (Dkt. 1 ¶¶ 4-5.)  But those two paragraphs simply recount, correctly, this Court's previous admonishment of Lask for suggesting that the Court endorsed her filing of the instant action.  (*Id.*)  Including those two paragraphs was not improper.

Lask's second defect argument is that the Notice of Removal did not include a copy of "all process and pleadings below."  (Dkt. 17 at 15.)  Lask overstates what the statute requires. The removal statute requires that the Notice of Removal include "a copy

of all process, pleadings, and orders **served upon** [the] defendant or defendants in [the state court] action."  28 U.S.C. § 1446(a) (emphasis added).  The Notice of Removal did just that by attaching the Summons (i.e., process) With Notice (i.e., notice in lieu of complaint) that commenced the case in state court.

Lask faults Defendants, however, for not including the affidavits of service she filed in state court prior to the date when Defendants filed for removal.  But while Lask contends she served Defendants with the Summons, she nowhere indicates that she served Defendants with the affidavits of service she filed in state court.  Accordingly, failure to include them does not violate the statute.

Certainly it would have been helpful to the Court, and better practice, for Defendants to have submitted the affidavits of service with the Notice of Removal.  *See Cassara v. Ralston*, 832 F. Supp. 752, 754 (S.D.N.Y. 1993) (stating in dicta that "[w]here a defendant does have access to a copy of the affirmation of service, such affirmation should be attached to the removal papers").  Even so, "[p]rocedural rules such as the directions found in section 1446(a) are not jurisdictional and the failure to file all the state court papers is curable in the federal court if there is a motion to remand."  *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 399 F.Supp.2d 340, 348 (S.D.N.Y. 2005) (internal quotation marks and modifications omitted).  Lask herself cured the omission by submitting the affidavits of service with her motion to remand.  (Dkts. 17 -2, -4, -5.)  *See Shukla v. Deloitte Consulting LLP*, No. 09-CV-10578, 2020 WL 949426, at *5 (S.D.N.Y. 2020) (stating, in reference to certain documents omitted from the Notice of Removal, that "even if these documents were required [to be attached to the notice of removal], Plaintiff himself attached them to his motion for remand and reply, 'and the

Court does not regard the initial omission as an adequate basis for remand'") (quoting *Hearst Magazines v. Stephen L. Geller, Inc.*, No. 08-CV-11312, 2009 WL 812039, at *3 (S.D.N.Y. Mar. 25, 2009)).

Accordingly, the purported defects identified by Lask do not provide a basis for remand.

## B.    The Unanimity Requirement Is Met

The unanimity rule requires that "all defendants who have been properly joined and served … join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A); *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021).  The rule was satisfied here as the Notice of Removal was filed on behalf of both Defendants, Dollinger and Rhee-Karn.  (Dkt. 1 at 1 (stating that "MARGARET RHEE-KARN and DOUGLAS R. DOLLINGER, ESQ., collectively the defendants, ("Defendants"), hereby seeks to remove …").)  Dollinger consented on his own behalf, and, as Rhee-Karn's attorney, consented on his client's behalf.

Lask nonetheless contends that the rule was not satisfied because Dollinger and Rhee-Karn have a conflict of interest, and thus Dollinger could not consent to removal on behalf of Rhee-Karn even though he represents Rhee-Karn.  (Dkt. 17 at ECF 19.)  A conflict exists, Lask argues, because Dollinger is a defendant as well as counsel for his co-defendant.  (*Id.*)  Lask has not cited any case finding a lack of unanimity due to a conflict of interest between an attorney and their client.  Regardless, Rhee-Karn executed a thorough conflict waiver.  (Dkt. 18-3.)   And even were a non-waivable conflict to arise in the future, it would not undo the unanimity existing at the time of removal.

Lack of unanimity therefore is not a basis for remand in this case.

16

C.    **The Forum-Defendant Rule**

Even when the parties are diverse, the removal statute prohibits removal if "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  Lask contends that those conditions exist here: on April 1 and 2, 2024, she filed affidavits of service in state court attesting to service of process on March 20, 2024 (as to Dollinger) and April 2 (as to Rhee-Karn); Defendants filed for removal after both those dates on April 9, 2024; and both Defendants are citizens of New York, the forum state.  As a result, according to Lask, remand is required pursuant to the § 1441(b)(2), the "forum-defendant rule."  *See Gibbons v. Bristol-Myers Squibb* Company, 919 F.3d 699, 704 (2d Cir. 2019) (denoting § 1441(b)(2) as "the forum defendant rule").  Defendants, however, assert that the rule does not apply because they were never properly served in conformity with New York State law.  That may be so; but Lask's argument fails for an additional reason.  Regardless of whether Defendants were properly served, their notice of removal was filed before service was complete.  The forum-defendant rule therefore does not bar removal.

In resolving a split among district courts, the Second Circuit in *Gibbons* construed § 1441(b)(2) by its plain terms to hold that the forum-defendant rule "is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."[5]  *Gibbons*, 919 F.3d at 705.  The *Gibbons* court thus

---

[5] The Court in *Gibbons* recognized that applying § 1441(b)(2) to allow "pre-service removal," could produce (i) anomalous results that appear to diverge from the "overarching purpose of the removal state" by allowing removal even when a defendant is a citizen of the forum state and thus unlikely to be "home-towned"; and (ii) non-uniform

affirmed the district court's denial of a motion to remand where the defendants had removed the case "***before*** any Defendant was served." *Id.* (emphasis in original). Accordingly, to determine if the forum-defendant rule requires remand here, the Court must assess whether Defendants removed the case prior to at least one of them being properly served. Both Defendants claim they were not properly served at any time, let alone before they filed for removal. The Court begins with a discussion of the applicable legal principles for service of process.

### 1. Legal Principles Relevant To Determining Proper Service

"[T]he Supreme Court has held [that] the deadline for removal must be triggered 'by formal process,' regardless of whether the defendant had informal notice of litigation." *Hudson Private LP v. Creative Wealth Media Finance Corp.*, 629 F. Supp.3d 237, 240 (S.D.N.Y. 2022) (citing *Murphy Brothers v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347, 199 S.Ct. 1322 (1999)); *see also Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 202 (2d Cir. 2011) (stating, in reference to the 30-day removal period under § 1446, "the commencement of the removal period could only be triggered by formal service of process, regardless of whether the statutory phrase 'or otherwise' hints at some other proper means of receipt of the initial pleading").

The Court looks to state law to determine whether and when formal service is made for the purposes of the removal statute. *Zeballos v. Tan*, No. 06-CV-1268, 2006 WL 1975995, at *6 (S.D.N.Y. July 10, 2006) ("Because service was attempted only before removal to federal court, the propriety of service must be determined by reference to state

---

results that vary state to state based on each state's rules of service." 919 F.3d at 705-07. The Court did not find, however, those outcomes to be either absurd or contrary to Congressional intent. *Id.*

18

law"); *Federal Insurance Company v. Tyco International Ltd.*, 422 F. Supp.2d 357, 383-84 (S.D.N.Y. 2006) (citing cases with respect to both removal and remand); *see generally Murphy Brothers*, 526 U.S. at 351-352 (discussing variation among different states' service rules in discussing Congressional intent with respect to time to remove).  Service of process on a natural person in New York is governed by C.P.L.R. § 308.  The rule enumerates five methods of service on an individual, two of which are permissible only in contingent situations: "(1) delivering the summons on the individual personally; (2) delivering the summons to [a person of suitable age and discretion at] the individual's place of business or residence, as well as mailing the summons to the individual at his place of business or residence ... ; (3) delivering the summons to an agent; (4) if neither 308(1) or 308(2) service can be made with due diligence, by affixing the summons to the door of the individual's place of business or residence, as well as mailing the summons to the place of business or residence; or (5) if 308(1), 308(2), or 308(4) is impracticable, then delivering summons in a manner specified by the court." *Cyrus v. Lockheed Martin Corp.*, No. 20-CV-6397, 2022 WL 203750, at *3 (E.D.N.Y. Jan. 24, 2022) (citing N.Y. C.P.L.R. § 308) (quotation marks omitted); *see also Cargill Financial Service International, Inc. v. Barshchovkiy*, No. 24-CV-5751, 2024 WL 4240998, at *2 (S.D.N.Y. Sept. 19, 2024).

The two methods implicated here are § 308(2), with respect to Rhee-Karn, and § 308(4), with respect to Dollinger.  The former provision is referred to as "substitute service" because personal delivery of service is not made directly to the defendant but instead upon another person.  *See e.g., Templos v. Luna Cuisine, Inc.*, 738 F. Supp. 3d 325, 331 (E.D.N.Y. 2024).  The latter, also sometimes referred to as substituted service,

is familiarly known as "nail and mail" service. *Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir. 1997). Under both provisions, service is not complete until ten days after proof of service has been filed as to both required components. *See* C.P.L.R. § 308(2) ("service shall be complete ten days after" filing proof of service of both mailing and delivery of the summons to a person of suitable age and discretion); § 308(4) ("service shall be complete ten days after" filing proof of service of both mailing and affixing the summons).

"In New York, a process server's affidavit of service establishes a prima facie case of the account of the method of service." *Old Republic Insurance Co. V. Pacific Financial Services of America, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). "A defendant's sworn denial of receipt of service," however, "rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id.* "Pursuant to the guidance in *Old Republic*, courts in this District order evidentiary hearings where needed to resolve conflicting affidavits regarding service of process." *Hudson Private LP.*, 629 F. at 242-43 (citing cases).

### 2. Defendants Removed The Action Before Service Was Complete

As explained above, both substitute service under § 308(2) – the method of service used for Rhee-Karn – and nail and mail service under § 308(4) – the method of service used for Dollinger – are not complete until ten days after the plaintiff files proof of service of both components of service required by each method. *See Beter v. Baughman*, No. 24-CV-0079, 2024 WL 1333570, at *7-8 (S.D.N.Y. Mar. 13, 2024) ("There are many cases in this District holding that, for purposes of determining whether removal based on diversity is timely or otherwise appropriate, substituted service in New York is only complete upon the expiration of ten days after proof of service is filed") (internal quotation

marks and citations omitted), *R&R* adopted, 2024 WL 1329066 (S.D.N.Y. Mar. 13, 2024);

*Creative Kids Far East Inc. v. Griffin*, No. 15-CV-6027, 2016 WL 8710479, at *2 (S.D.N.Y.

Jan. 22, 2016) (collecting cases holding that substituted service is complete only "upon

the expiration of ten days after proof of service is filed").  A review of the state court docket

in the action prior to removal shows that Defendants removed the case ***before*** completion

of service on either Defendant.

The state court list of docket entries includes the filing of three separate proofs of

service.  On March 20, 2024, Lask's co-counsel filed an affirmation of service of mailing

the Summons to Defendants.  (Dkt. 17-7 no. 3.)  On April 1, 2024, Lask filed proof of nail

and mail service on Dollinger.  (Dkt. 17-7 no.4-6.)  The following day, April 2, 2024, Lask

filed proof of substitute service on Rhee-Karn.  (Dkt. 17-7 no. 7-8.)  Defendants filed their

notice of removal on April 9, 2024 – eight days after Plaintiff filed proof of service on

Dollinger and seven days after Plaintiff filed proof of service on Rhee-Karn.  (Dkt. 17-7

no. 9.)  Under C.P.L.R. §§ 308(2) and (4), service was not complete until April 11, 2024,

with respect to Dollinger, and April 12, 2024, with respect to Rhee-Karn.  Accordingly,

Defendants filed their notice of removal before service was completed as to either of them,

and the forum-defendant rule of 28 U.S.C. § 1441(b)(2) does not require remand.  *See*

*Beter*, 2024 WL 1333570, at *7-8 (finding that removal was proper notwithstanding forum-

defendant rule because removal was filed less than ten days after filing of proof of service

pursuant to § 308(2)); *Lewis v. Permanent Mission of Cote D'Ivoire to United Nations*, No.

19-CV-1375, 2019 WL 4198943, at *2 (S.D.N.Y.  Aug. 7, 2019) (denying motion to remand

because service was complete only after the expiration of ten days after filing proof of

service under § 308(2), and defendant timely filed notice of removal within the 30-day removal period following that date).

The foregoing analysis forecloses remand under the forum-defendant rule.  But even if it did not, remand still would not be warranted because Lask did not effectively serve process on either Dollinger or Rhee-Karn.

### 3.  Dollinger

Dollinger asserts that Lask's process server failed to properly serve him by resorting to "nail and mail" service at Dollinger's place of business without having made any attempts to serve him at his home and thus did not exercise the "due diligence" required by § 308(4).  The Court agrees.

### a.  Facts Relevant To Service On Dollinger

Before attempting service by formal means, Lask sought Dollinger and Rhee-Karn's agreement to accept service.  On March 20, 2024, Lask's co-counsel, Alexander Dudelson, mailed copies of the Summons to both Rhee-Karn and Dollinger, each at two different addresses, all within New York.  (Dkt. 17-2.)  Dudelson also emailed Dollinger and Rhee-Karn requesting that they accept service of the Summons to avoid having to pay a fee for service.  (Dkt. 18 ("Dollinger Decl.") ¶ 7.)  Neither accepted.  Instead, on March 25, 2024, Dollinger wrote to this Court about Lask's lawsuit, seeking sanctions and to enjoin Lask from pursuing the case, which Dollinger asserted was being pursued to improperly influence the then-upcoming trial on damages in *Rhee-Karn v. Lask*.  (Dkt. 17-3.)  Dollinger indicated that without such relief, he would remove the case to this Court. (*Id.* at 4.)

In addition to mailing the Summons, Lask retained process servers to attempt to personally serve both Dollinger and Rhee-Karn.  According to the affidavit of service executed on April 1, 2024, a process server named James Predmore attempted to serve Dollinger at his last known place of business, 570 County Route 49, Middletown, New York.  (Dkt. 17-4.)  Predmore made four attempts, each unsuccessful.[6]  The attempts were made on March 28, 2024 at 2:47 pm; the same day at 8:17 pm; the following day March 29, 2024 at 1:59 pm; and later that evening at 9:56 pm.  As he did not serve the papers personally to Dollinger, the process server affixed a copy of them to the door of the premises.  (*Id.*)

Dollinger avers that on or about March 27, 2024 – the day before the first service attempt at his business address – he became ill and was directed by his doctor to remain home and in bed.  Dollinger did not return to his office until April 4, 2024.  (Dollinger Decl. ¶ 10.)  Dollinger does not assert that when he returned the legal papers were no longer affixed to the door of the premises.

### b.  Service On Dollinger Was Not Proper

As explained above, nail and mail service is available only if the serving party cannot accomplish service under either CPLR § 308(1) or (2) after having attempted to do so with due diligence.  There is no dispute that Lask did not effect service on Dollinger under the first and second means of service.  The question presented here is whether process server Predmore's four attempts to serve Dollinger personally at his place of

---

[6] The affidavit of service does not expressly state that process server Predmore attempted personal service (such as by ringing a doorbell or knocking) at the time he affixed the Summons and Notice to the door.  For present purposes, the Court infers that he did, thus constituting four attempts at personal service at Dollinger's place of business.

business over the course of two days constitutes due diligence.  Under New York law, it does not.

Whether attempts to effectuate service constitute due diligence is determined on a case-by-case basis.  *See Barnes v. City of New York*, 51 N.Y.2d 906, 907, 434 N.Y.S.2d 991 (N.Y.1980); *Estate of Waterman v. Jones*, 46 A.D.3d 63, 66, 843 N.Y.S.2d 462, 464 (2d Dep't 2007).  However, "the due diligence requirement of CPLR 308(4) must be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received."  *Sartor v. Toussaint*, 70 Fed. Appx. 11, 13 (2d Cir. 2002) (quotation marks and citation omitted); *McSorley v. Spear*, 50 A.D.3d 652, 653, 854 N.Y.S.2d 759 (2d Dep't 2008).  "In assessing whether the due diligence requirement is satisfied, courts look to the quality of the efforts made to effect personal service, and certainly not to their quantity or frequency."  *Joe Hand Promotions, Inc. v. Necessary Studios, Inc. H Roller Group, LLC v. C & S Global, Inc.*, No. 21-CV-5551, 2022 WL 18858972, at *4 (E.D.N.Y. Dec. 5, 2022) (internal quotation marks and citations omitted).

"For instance, while courts generally 'require[ ] approximately three attempts at service, optimally on non-consecutive days ... [s]ome courts will find that three attempts is not enough, if the process server does not make inquiries about the defendant's residence or employment."  *Id.* (modifications in original) (quoting *Weifang Xinli Plastic Prod. v. JBM Trading Inc.*, No. 11-CV-2710, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (collecting cases), *aff'd*, 583 F. App'x 24 (2d Cir. 2014); *see also Westchase Residential Assets II, LLC v. Gupta*, No. 14-CV-1435, 2016 WL 3688437, at *3 (E.D.N.Y. July 7, 2016) (quoting *Estate of Waterman*, 46 A.D.3d at 66) ("Courts have found that 'a mere showing of several attempts at service at either a defendant's residence or place of

24

business may not satisfy the 'due diligence' requirement before resort to nail and mail service").

The multiple attempts at personal service on Dollinger are problematic for several reasons. First, all of them took place at his purported place of business. The process server's affidavit is devoid of any indication that he also attempted personal service at Dollinger's residence. The lapse is particularly egregious because "there was no visible sign for [Dollinger's] law office" at the purported business address (Dkt. 17-4); the neighbor who the process server queried did not know who lives at that address (*id.*); and the Summons itself includes Dollinger's home address in addition to his business address, and both addresses are in the same town. (Dkt. 1-1 at ECF 1.) Second, the attempts took place over two consecutive days, not non-consecutive days. Third, only two of the attempts were made at hours that Dollinger could reasonably be expected to be at his place of business. The other two attempts were made after normal work hours at 8:17 p.m. and 9:56 p.m. (*Id.*) Fourth, the two daytime attempts, occurring over consecutive days, were made at times within less than an hour of each other – 1:59 p.m. and 2:47 p.m. – rather than at varied times, such as one attempt in the morning and one in the afternoon. (*Id.*)

Taken together, those shortcomings well establish that the due diligence requirement for nail and mail service on Dollinger was not met. *See, e.g.*, *Joe Hand Promotions*, 2022 WL 18858972 at *5 (finding no due diligence where process server attempted to serve defendant at his business address three times before resorting to nail and mail service; only two of those attempts occurred during normal business hours; and the affidavit contained no indication that the process server attempted to ascertain

defendant's residential address to serve him at that location); *Prudence v. Wright*, 94 A.D.3d 1073, 1074, 943 N.Y.S.2d 185 (2d Dep't 2012) (finding due diligence lacking "because two of the three attempts at service were at times when the defendant could not reasonably be expected to be at work" and because "no attempt to effectuate service was made at the defendant's actual 'dwelling place or usual place of abode,'"); *Estate of Waterman*, 46 A.D.3d at 65 (finding no due diligence because process server only attempted service at defendant's place of business); *cf. Absolute Nevada, LLC v. Baer*, 2022 WL 350255, at *2 (2d Cir. Feb. 7, 2022) (affirming finding that due diligence was satisfied where process server visited defendant's actual home, which was also his business address, on four occasions over three days at different times); *U.S. Bank, N.A. v. Cepeda*, 64 N.Y.S.3d 104, 105 (2d Dep't 2017) (finding "that three visits ... to the homeowner's residence, each on different days and at different times of the day" were sufficient to permit nail and mail service).

Lask suggests that Dollinger, as well as Rhee-Karn, cannot rely on failure of proper service because, regardless, they were aware of the state court action at least as of March 25, 2024, when they informed this Court that Defendants intended to remove the action. (*See* Dkt. 17 at 10.)  That argument has no merit.  "[S]ervice of process that does not comply with the authorized statutory methods is deficient even if the defendant learns that the action is pending."  *Farquharson v. Barnes & Noble, Inc.*, No. 17-CV-300, 2018 WL 11486486, at *5 (E.D.N.Y. Mar. 5, 2018) (citing cases).

Lask also faults Dollinger and Rhee-Karn for intentionally evading service of process.   (*See* Dkt. 17 at 10-12.)  This argument too is unavailing.  Evading service can have adverse consequences for a defendant, such as providing a basis to infer willfulness

in awarding default judgment, *see, e.g.*, *Wilmington Trust, National Association v. Rafiqor*, No. 22-CV-6177, 2023 WL 6237680, at *4 (S.D.N.Y. Sept. 26, 2023) (finding default was willful because defendant "intentionally and repeatedly" evaded service), or good cause under federal rules for extending a plaintiff's time to effect service, *see, e.g.*, *Etheredge-Brown v. American Media, Inc.*, No. 13-CV-1982, 2015 WL 4877298, at *3 (S.D.N.Y. Aug. 14, 2015) (stating "if established, a defendant's evasion of service may constitute good cause"). Lask has not cited, however, any case in the Second Circuit holding that evasion of service of process subjects a defendant to the forum-defendant rule when they otherwise would not be.[7]

At least one case outside the Second Circuit has held that a defendant's evasion of service will not forestall the start of the 30-day removal period under § 1446(b)(1). *Waddell v. National Asset Recovery, Inc.*, No. 08-0250-CV-W-HFS, 2009 WL 10705240, at *3 (W.D. Mo. Jan. 28, 2009). *Waddell*, however, has been expressly rejected by later courts. *See First Star Logistics, LLC v. Cuthbertson*, No. 1:23-CV-152, 2023 WL 3748795, at * (S.D. Ohio June 1, 2023) (declining to follow *Waddell* and stating that the court "could not find any other published or unpublished decision adopting *Waddell*" and recognizing that "at least one other district court … refused to adopt [it]") (citing *Tovar Snow Professionals, Inc. v. ACE American Insurance Co.*, No. 20-C-1060, 2020 WL 5658705, at *2 (N.D. Ill. Sept. 23, 2020)); *Infinity Real Estate, LLC v. Deutsche Bank*

---

[7] Lask relies on cases that all predate and were essentially overruled by the Second Circuit's decision in *Gibbons*. (*See* Dkt. 17 at 12, citing *Comunale v. Rackover*, No. 17-CV-5689, 2017 U.S. Dist. LEXIS 211066 (S.D.N.Y. Dec. 22, 2017); *Veleron Holding B.V. v. Morgan Stanley*, No. 14-CV-7874, 2014 WL 6386733 (S.D.N.Y. Nov. 13, 2014); and *In re Intralinks Holdings*, Nos. 11-CV-9636, 12-CV-3213, 2013 WL 929836 (S.D.N.Y. Mar. 11, 2013).)

*National Treasure Co. for RBSGC 2007-B*, No. 2:18-CV-00038, 2018 WL 4204642, at *3 n.2 (D. Me. Sept. 4, 2018) (not referencing *Waddell* but declining to find an "evasive" exception and stating "the issue is whether service has been effected, not whether [the plaintiff] has been diligent or [the defendant] evasive").

Some out of Circuit cases also have suggested that "egregious" evasion of process possibly could be an exception precluding a forum defendant's removal.  *See, e.g., Jackson v. Howmedica Osteonics Corp.*, No. 19-18667, 2020 WL 6049400, at *6 n.4 (D.N.J. June 15, 2020), *R&R adopted*, 2020 WL 4188165 (D.N.J. July 20, 2020) (suggesting that some service delaying tactics may be so egregious as to render removal improper); *Dutton v. Ethicon, Inc.*, 423 F. Supp. 3d 81, 90 n.4 (D.N.J. 2019) (same); *see generally* Percy, *It's Time for Congress to Snap to It and Amend 28 U.S.C. § 1441(b)(2) to Prohibit Snap Removals That Circumvent the Forum Defendant Rule*, 73 Rutgers U. L. Rev. 579 (2021) (arguing Congressional action is needed to amend the removal statute to prohibit removals where forum defendants remove cases prior to completion of service of process).  Those courts, however, did not pass upon the issue, finding that regardless of if there were such an exception, the evasive measures employed by the defendants were not egregious.  Here too, the Court need not rule on the legal issue because the Court does not find sufficient evidence that either Dollinger or Rhee-Karn intentionally evaded service, let alone egregiously so.[8]

---

[8] Even though the Court need not rule on the issue of whether, under the removal statute, intentional evasion of service of process may be an exception to pre-service removal by a forum defendant, the Court recognizes the salutary nature of such an exception, particularly given that the removal statute is to be construed narrowly, resolving any doubts against removability; the rationale behind the forum-defendant rule to avoid

28

In sum, Lask not only failed to complete service on Dollinger, she never properly served him.

### 4. Rhee-Karn

Rhee-Karn contends that Lask's process server did not properly fulfill the requirements for substituted service under § 308(2) for leaving legal papers with a person of suitable age and discretion at the apartment building where Rhee-Karn lives.  The Court agrees.

### a. Facts Relevant To Service On Rhee-Karn

The affidavit of service on file for service of the state court papers on Rhee-Karn indicates that service was made the morning of April 2, 2024, at 402 East 90th Street. (Dkt. 17-5.)  There is no dispute that Rhee-Karn lives in the apartment building at that address.  The affidavit of service, signed by Beth Brice, states that service was made by mail to Rhee-Karn's address and by personal service on "Carlos the doorman," a person of suitable age and discretion.  Brice provided the following additional information in the affidavit: "Doorman called respondent [Rhee-Karn].  Respondent directed doorman to not allow server upstairs and to not receive the letter addressed to the respondent. … [Server] informed doorman that letter is being left in front of him on the desk and for it to be delivered to the respondent.  Server exited building."  (*Id*.)

Brice submitted a declaration dated May 9, 2024, attesting that by "letter," Brice "mean[t] I served an envelope with the Summons and Notice described on the Affidavit inside the envelope and I told [the doorman] I was serving legal documents to deliver to

---

potential prejudice to out-of-state defendants; and the inequity of rewarding a party's intentional evasion of service of process.

Defendant Rhee-Karn."  (Dkt 16 ("Brice Aff.") ¶ 2.)  With their opposition to the instant motion, however, Defendants filed a declaration of the doorman, Carlos Herrera, and a declaration from Rhee-Karn.  Herrera attests that the woman who approached him on April 2, 2024, said that she had a letter for Rhee-Karn.  (Dkt. 18-2 ("Herrera Decl.") ¶ 1.) Herrera then called Rhee-Karn on the lobby telephone advising that a "lady" was in the lobby and had a "letter" for her.  Rhee-Karn informed Herrera that she was not expecting anyone or a letter and directed Herrera not to let the woman in and not to accept the letter.  (*Id.* ¶ 2.)  According to Herrera, the woman never identified herself as a process server or said that she was leaving legal papers in the envelope she left on the lobby desk.  Nor did Herrera give the envelope to Rhee-Karn.  (*Id.* ¶ 3.) Rhee-Karn's declaration corroborates Herrera and adds that she believed the woman about whom Herrera called was a salesperson or other person trying to improperly gain access to the building.  (Dkt. 18-1 ("Rhee-Karn Decl.") ¶¶ 2-5.)  Rhee-Karn never received the letter that was left in the lobby.  (*Id.* ¶ 6.)

Because of the conflict in the sworn statements about what Brice communicated to Herrera on April 2, 2024, in the lobby of Rhee-Karn's building, the Court held an evidentiary hearing on April 17, 2025.  Three witnesses testified:  Brice, Herrera, and Rhee-Karn.  Brice's testimony was inconsistent.  She testified on direct that she told Herrera that Brice was there "to serve documents."  (Tr. 5:14-19.) On cross, Brice testified that she told Herrera that Brice was there "to see Ms. Karn" but did not recall telling Herrera the purpose of her visit.[9]  (Tr. 21:12-19.)  Later, however, Brice testified that she

---

[9] "Tr." refers to the transcript of the evidentiary hearing held on April 17, 2025.  (*See* Dkt. 81.)

did not inform Herrera that she was delivering legal papers before Herrera called Rhee-Karn to let her know someone was trying to deliver a letter to her (Tr. 22:18-21), but that she did so inform Herrera after the call and before she left.  (Tr. 22:22-25.)  When asked why Brice did not include that information in her affidavit of service – which instead says that Brice "informed the doorman that letter is being left" for delivery to Rhee-Karn – Brice tersely answered "clerical error."  (Tr. 23:1-3.)  The Court finds that answer not particularly credible in light of Brice's inconsistent testimony and what she set forth in her affidavit of service (using the term "letter" twice).  Moreover, the evidentiary hearing was held more than a year after Brice executed her affidavit of service, and it was apparent to the Court that Brice did not have reliable independent recall of the event (*see, e.g.,* Tr. 5:16-6:4, 21-22; 19:25-20:2), even though she denied having no independent recollection at all.  (21:2-11.)

Herrera testified after Brice.  He testified affirmatively that Brice never explained to him that she was serving papers on Rhee-Karn but rather only referred to "this" (meaning the envelope) to be delivered to Rhee-Karn.  (Tr. 39:1-18; *see also* Tr. 38:21-24 (testifying that Brice did not identify herself as a process server).)  However, Herrera's independent recall generally was poor.  Lask cast some doubt on Herrera's sworn statement and testimony, not only by establishing that Herrera may be biased given that Rhee-Karn tips him at Christmastime (Tr. 31:8-9), but also because Rhee-Karn presented him with his sworn statement for signature.  (Tr. 36:3-5; 43:21-44:16.)  Nonetheless, Herrera struck the Court as earnest and sincere; he testified that he read his statement before he signed it (Tr. 50:24-51:5.); and Rhee-Karn testified that although Herrera's statement was

prepared by Rhee-Karn and her lawyer Dollinger, it was based on information that Herrera provided to them.  (Tr. 44:8-45:3; *see also* Tr: 46:4-7.)

Taking into account the credibility issues afflicting both Brice and Herrera, the most reliable evidence before the Court is Brice's affidavit of service executed the same day Brice attempted service on Rhee-Karn.  Based on that affidavit, together with the testimony and other sworn statements and relevant exhibits, the Court finds that Brice informed Herrera that she had a letter to be delivered to Rhee-Karn but did not apprise Herrera that she was serving legal papers.

### b.  Service On Rhee-Karn Was Not Effective

As set forth above, service pursuant to § 308(2) requires mailing and delivery of process to someone of suitable age and discretion.  The record establishes that Brice mailed the Summons to Rhee-Karn.  (*See* Tr. 11:15-14:15; Hearing Exs. 3-4.)  Rhee-Karn testified that she never received the mailing (Tr. 49:4-14), but that is irrelevant.  "Service is valid under [§ 308(2)] as long as the summons is mailed, even if the defendant never receives the copy sent by mail."  *Jiao v. First International Travel, Inc.*, No. 03-CV-0165, 2004 WL 1737715, at *3 (S.D.N.Y. Aug. 4, 2004); *see also MRS Property Investments, Inc. v. Bivona*, No. 21-CV-1104, 2021 WL 1738329, at *3 (E.D.N.Y. May 3, 2021) (finding "irrelevant" the absence of evidence that defendant received any mailing); *Perez v. County of Westchester*, 83 F. Supp.2d 435, 441 (S.D.N.Y.), *aff'd*, 242 F.3d 367 (2d Cir. 2000) (deeming mailing complied with § 308(2) even if defendant's denial of receipt of the mailing is credited).

With respect to the personal delivery component, "New York law provides that a doorman is presumptively a person of suitable age and discretion."  *MRS Property*, 2021

WL 1738329, at *3 (internal quotation marks and citations omitted); *see also 6340 NB LLC v. Capital One, N.A.*, No. 20-CV-2500, 2022 WL 4386821, at *2 (E.D.N.Y. Sept. 22, 2022) (stating that "it is well settled that service upon a doorman constitutes sufficient service under New York law").  Where, as here, "a process server is not permitted to proceed to the actual apartment by the doorman or some other employee, … the doorman becomes all the more 'suitable' as a repository of the papers because he is in effect the only accessible party." *MRS Property*, 2021 WL 1738329, at *3 (internal quotation marks and citations omitted).  Additionally, it is sufficient for the process server to leave the legal papers "in the general vicinity" of the doorman if he or she does not otherwise accept them.  *Zabari v. Zabari*, 154 A.D.3d 613, 614, 63 N.Y.S.3d 364 (1st Dep't 2017); *Charmin v. Cogan*, 250 A.D.2d 513, 673 N.Y.S.2d 134 (1st Dep't 1998).  That is what happened here.  Brice left the envelope with the Summons in the vicinity of Herrera when she left it on the desk near which Herrera was standing.[10]  (Tr. 31:15-32:18.)

Nonetheless, service on Rhee-Karn was ineffective because Brice did not apprise Herrera, by either words or conduct, that she was serving legal papers.  To be sure, there is no talismatic phrase or words that a process server must use when serving process.  Rather, under New York law, "[t]he object of all service of process is to give notice to the party on whom service is made, that he may be aware of and may resist what is sought of him.  The party served must in some substantial form be apprised of the fact that service is intended to be made." *Singh v. Meadow Hill Mobile Inc.*, No. 20-CV-3853, 2023 WL 3996867, at *5 (S.D.N.Y. June 14, 2023) (brackets in original) (quoting *In re*

---

[10] Whether or not Brice "placed" the envelope on the table, as Brice testified (Tr. 9:17-18), or "threw" the envelope at the desk, as recounted by Herrera (Tr. 32:4), is irrelevant.

*Bonesteel's Will*, 228 N.Y.S.2d 301, 304 (App. Div. 1962)); *see also Hiller v. Burlington & M.R.R. Co.*, 25 Sickels 223, 70 N.Y. 223 (N.Y. 1877) ("the object of all service of process is said to be to give notice to the party on whom service is made, that he may be aware of and may resist what is sought of him, and it is a general rule that any service must be deemed sufficient which renders it reasonably probable that the party proceeded against will be apprised of what is going on against him, and have an opportunity to defend"). Indeed, due process requires that "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *Gleason v. McBride*, 869 F.2d 688, 692 (2d Cir. 1989) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950)).

Therein lies the problem with respect to service on Rhee-Karn. Had Brice been able to deliver the envelope containing the Summons directly to Rhee-Karn and merely referred to the contents as a letter, service might have been effective. *See Singh*, 2023 WL 3996867, at *5 (opining that service did "[not] necessarily f[a]ll afoul of" the New York standard, where the defendant received a plain white envelope directly from the process server and did not reject acceptance of the envelope, even though the server did not inform the defendant that the envelope contained a summons and complaint). "Yet, where the person to be informed is not the ultimate intended recipient, but a substitute person of suitable age and discretion, due process requires that the process server communicate sufficient information which, when objectively viewed, is reasonably calculated to assure that the person ultimately to be served will be apprised of the action." *Colonial Bank, U.S.A. v. Jacobs*, 188 Misc.2d 87, 91 (N.Y. Civ. Ct. 2000) (citing, *inter alia*,

*Mullane*, 339 U.S. at 314; *Beckman v. Greentree Services, Inc.*, 87 N.Y.2d 566, 570, 640 N.Y.S.2d 845 (N.Y. 1996)).

Courts thus have found substitute service insufficient under § 308(2) when the person of suitable age and discretion has rejected acceptance of a process server's delivery, and the process server either left an envelope containing a summons in the vicinity of the substitute recipient or outside the substitute recipient's door but did not inform that person that the process server was serving legal papers. *See, e.g.*, *Board of Education of The Liverpool Central School District v. Sobol*, No. 90-CV-198, 1991 WL 22320, at *4 (N.D.N.Y. Feb. 19, 1991) (finding ineffective service under "any subsection of CPLR § 308" where process server, accompanied by security guard, left a nondescript manilla envelope on an unoccupied desk in an empty conference room, "especially when the server failed to announce the purpose of her venture to the only person she encountered in the building"); *Roman v. Guzzardo*, 198 A.D.2d 489, 489, 604 N.Y.S.2d 183 (2nd Dep't 1993) (service under § 308(2) was not effective "because the process server never told the person who purportedly refused to open the door that he was there to serve legal papers"); *MacGregor v. Piontkowski*, 133 A.D.2d 263, 263, 518 N.Y.S.2d 820 (2nd Dep't 1987) (finding service under § 803(2) was defective and stating that plaintiffs were "required to show" not only that the person to whom delivery was being made was of suitable age and discretion, but also that "the person to whom delivery was being made was informed that a summons was being left outside the door"); *Colonial Bank*, 188 Misc.2d at 91 (finding service not effective where doorman barred the process server's access beyond apartment building's inner lobby, doorman declined to accept delivery, and process server affixed envelope to outer door of building but did not make

the doorman aware of "the process server's objective"); *cf. Anselm v. Diamond Packaging*, No. 14-CV-6388, 2015 WL 2095774, at *6 (W.D.N.Y. May 5, 2015) (finding service on corporation was not effective where process server left summons and complaint in a plain sealed envelope with receptionist and "never identified herself as a process server or gave any indication that the envelope contained legal papers").

Here, the Court has determined that process server Brice did not apprise doorman Herrera of her purpose in delivering a "letter" to be given to Rhee-Karn. Accordingly, Herrera had no reason to think that the contents of the envelope was of any consequence. All the more so, because, when Herrera phoned Rhee-Karn to tell her that a lady had a letter to deliver to Rhee-Karn, Rhee-Karn informed Herrera that he should not accept the letter, believing it to be a sales endeavor. (Rhee-Karn Decl. ¶ 4.) By not informing Herrera of her actual purpose in delivering the letter, Brice did nothing that would have led him to believe otherwise.

Lask thus did not properly serve either Dollinger or Rhee-Karn. Regardless, even if service were proper, Defendants filed their notice of removal before completion of service on either of them. The forum-defendant rule thus does not apply, and Lask's motion to remand should be denied.

## IV.

## Sanctions, Fees, And Costs

Defendants seek sanctions against Lask and her co-counsel Dudelson. Defendants argue that sanctions are warranted pursuant to 28 U.S.C. § 1927 and the Court's inherent power because Lask concealed her true state of citizenship and deceived

the Court. (Dkt. 32-1 at 6-9.) For her part, Lask asks the Court to award fees and costs in connection with her challenge to removal pursuant to 28 U.S.C. 1447(c).

## A.    Lask Is Not Entitled To Fees And Costs

Lask's request for fees and costs can be readily rejected. The removal statute provides that "an order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (emphasis added). The purpose of this fee-shifting provision is to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140, 126 S.Ct. 704, 709 (2005). Inasmuch as Lask's motion to remand should be denied, there is no basis to award her fees and costs. And, even if Lask ultimately had been successful in seeking remand, an award of fees and costs would not be warranted given her lack of candor about her state of citizenship. *See Martin*, 546 U.S. at 141 (explaining that awarding fees and costs under the statute for a successful motion to remand is not mandatory, but rather a matter within the court's discretion; that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal"; and "Plaintiff's … failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees").

## B.    Sanctions Against Lask Are Warranted

"A federal court may 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Rossbach v. Montefiore Medical Center*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v.*

*Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)).  A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court.  Similarly, under Section 1927, a district court may award attorney's fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927.  An objective of sanctions pursuant to either § 1927 or the court's inherent authority is deterrence.  *See Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) ("A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court"); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (citing legislative history for proposition that the purpose of 28 U.S.C. § 1927, is to "deter unnecessary delays in litigation") (citation omitted).  To impose sanctions under either authority, the trial court must find "clear evidence that the conduct at issue is [i] entirely without color and [ii] motivated by improper purposes."  *Wolters Kluwer Financial Services., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (invoking standard for court's inherent authority to impose sanctions); *see also Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 179 (2d Cir. 2012) (applying same two-part test for sanctions under § 1927).

Whether imposed pursuant to § 1927 or the Court's inherent authority, sanctions require "an explicit finding of bad faith."  *Rossbach*, 81 F.4th at 143 (quoting *United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000)).  Bad faith applies not only to the act of initiating a claim but also the party's subsequent conduct, *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 484 (S.D.N.Y. 2018), and must be shown by clear and convincing evidence.  *Liebowitz v. Bandshell Artist Management.*, 6 F.4th 267, 281

(2d Cir. 2021). Sanctions are to be imposed "with restraint and discretion." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999). As "the standards for imposing § 1927 and inherent authority sanctions are the same," the Court need only conduct a single analysis. *Jones v. Combs*, 759 F. Supp. 3d 534, 540 (S.D.N.Y. 2024).

Here, the Court finds, by clear and convincing evidence, that Lask acted in bad faith by failing to be candid with the Court and vexatiously multiplying proceedings. Lask advanced the argument that Defendants had not demonstrated diversity of the parties, knowing full well that diversity did exist. Lask knew that Defendants were citizens of New York and that she was a citizen of Florida, yet she led this Court to believe that diversity may not in fact exist. At the very time she had filed the Verified Complaint in the EDNY Action averring that she was a citizen of Florida at all relevant times (which encompass the relevant times here), she moved to remand the instant matter in part on the basis that Defendants had not sufficiently demonstrated diversity of citizenship. *See In re Reyes*, No. 23-CV-04185, 2023 WL 8184933, at *6 (S.D.N.Y. Nov. 25, 2023) ("Appellant, as an officer of the court, was obligated to do more than not lie to the Court. … [C]andor is not the state of simply not lying; candor is the quality of being open and honest in expression") (internal quotation marks omitted); *Manhattan Review LLC v. Yun*, No. 16-CV-102, 2017 WL 11455317, at *7 (S.D.N.Y. Sept. 21, 2017) (recognizing that "the failure to mention a relevant prior action indicates a lack of candor"), *aff'd*, 919 F.3d 149 (2d Cir. 2019).

Lask's attempt to erase her admission in the EDNY Action by filing the Amended Verified Complaint further evidences her bad faith. Her amendment was made not to correct an "error," as she contends (Dkt. 44 at 2), but rather to retract a true fact and

replace it with a vague assertion that obscured her state of citizenship (i.e, that Lask was not a citizen of New York).  And, it was only by happenstance that Defendants even learned of the EDNY Action and Lask's Verified Complaint admitting that she was a Florida citizen.  Even then, Lask argued here that, having amended her complaint in the EDNY Action, her admission to being a Florida citizen in the Verified Complaint could no longer be treated as such by the Court.  At the same time, she failed to acknowledge that her averment still has evidentiary value as clearly provided under the law.  *See GAF Corp.*, 928 F.2d at 1259; *Phillips*, 2018 WL 4572971, at *4 n.3.

Lask's bad faith is further demonstrated by her evasiveness in responding to the Court's order for her to file a Rule 7.1 statement identifying her citizenship.  As explained above, Lask intentionally failed to comply with the Court's order of February 19, 2025, which required her to file a Rule 7.1 Statement disclosing her state of citizenship.  (Dkt. 56.)  Instead of identifying her state of citizenship, Lask filed a statement asserting that she "was ***not*** a domicile of New York."  (Dkt. 62 at 2 (emphasis added).)  Given Lask's failure to comply, the Court issued another order requiring Lask to file an amended Rule 7.1 Statement providing the correct information under penalty of contempt if she failed to comply.  (Dkt. 63.)  Only then did Lask filed a Rule 7.1 Statement confirming that her "state of citizenship … both at the time she filed her action in state court and at the time Defendants filed for removal to federal court was Florida."  (Dkt. 64. at 2.)

As a result of her lack of candor and attempt to obscure her state of citizenship, Lask unreasonably compounded the proceedings in this case.  Indeed, the R&R's recommendation to remand was premised on Defendants' failure to establish diversity because their allegation that Lask was a citizen of either Florida or New Jersey was

insufficient. The R&R then triggered Defendants' objections, motions for reconsideration, and multiple rounds of briefing, much of which was devoted to the diversity issue. Had Lask not obfuscated, those machinations could have been avoided, as would the corresponding wasted expenditure of time and resources by Defendants as well as the Court.[11]    *See Hong v. Mommy's Jamaican Market Corp.*, No. 20-CV-9612, 2024 WL 3824394, at *21 (S.D.N.Y. Aug. 14, 2024) (imposing sanctions to account not only for defendants' excess expenditures due to attorney's misconduct but also for having "wasted court resources in needlessly prolonging this litigation") (citing *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 76 (S.D.N.Y 1991) ("An appropriate sanction should also take into account the waste of judicial time and resources occasioned by the violation")).

Sanctions thus are clearly warranted pursuant to both 28 U.S.C. § 1927 and the inherent power of the Court. The question then becomes what sanctions should be issued and on whom. Lask, as both party and counsel, has been the lead attorney in prosecuting this action. Lask's co-counsel, Dudelson, has played only a minor role, at least based on

---

[11] To be clear, had Lask been candid about her citizenship, the Court would still have been faced with addressing Lask's other arguments for remand, which are set forth in this R&R. But had Lask done so, the Court, consistent with the instant R&R, would not have recommended remand and would not have had to devote the considerable time and resources to analyzing and addressing whether the diversity requirement was met for removal. Notably, this is not the first time Lask has been sanctioned for impeding disclosure of facts. *See Lask v. Florence*, No. A-0706-17, 2021 WL 668027 (N.J. App. Div. Feb. 22, 2021) (unpublished). In *Florence*, Lask, representing herself, filed suit against a former client over a fee dispute. Lask provided insufficient answers to interrogatories and failed to appear for her own deposition. 2021 WL 668027, at *3-4. The trial court sanctioned Lask by dismissing her complaint with prejudice. *Id.* at 4. In affirming the sanction, the appellate court found "ample support" for sanctioning Lask and stated that Lask's conduct "caused undue delay and prevented the court and attorney defendants from acquiring the necessary facts." *Id.* at 8.

what the Court has observed in conferences and hearings.  Lask is clearly the attorney in charge.    Moreover, Dudelson has not appeared as co-counsel with Lask in the EDNY Action, and there is no other evidence to suggest that he had any knowledge of Lask's Verified Complaint in that case or her subsequent amendment obfuscating her state of citizenship.  Accordingly, sanctions should be imposed only against Lask.[12]

Sanctions imposed pursuant to § 1927 expressly are limited to "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  A wider range of sanctions may be imposed pursuant to the inherent power of the Court.  *Thai Lao Lignite (Thailand) Co., Ltd. v. Government of the Lao People's Democratic Republic*, No. 10-CV-5256, 2011 WL 4111504, at *10 n. 9 (S.D.N.Y. Sept. 13, 2011) ("Pursuant to its inherent power, a court may impose a wide range of sanctions against a party or its counsel for any abusive litigation practice undertaken in bad faith") (citing *Penthouse International Ltd. v. Playboy Enterprises*, 663 F.2d 371, 386 (2d Cir. 1981)).  A court even has the discretion to dismiss a lawsuit as a sanction for attorney misconduct.  *See Chambers v. NASCO*, 501 U.S. 32, 45, 111 S.Ct. 2123 (1991).  However, "when imposed pursuant to civil procedures," an attorney's fees sanction pursuant to inherent powers must be "compensatory rather than punitive."  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 137 S.Ct. 1178, 1186 (2017).  In the absence

---

[12] As an attorney and party, Lask is subject to sanctions pursuant to both 28 U.S.C. § 1927 and the inherent power of the Court.  *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (Whereas "awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts … an award made under the court's inherent power may be made against an attorney, a party, or both").

of criminal-type protections, which are not present here, "a court's shifting of fees is limited to reimbursing the victim." *Id.*

Defendants motion for sanctions does not specify any particular form of sanction other than striking Lask's motion to remand. (*See* Dkt. 32-1 at 8-9.) The Court is reluctant to recommend striking the motion to remand in its entirety. Although the Court finds them to be without merit, Lask advanced several arguments in support of remand other than the feigned lack of diversity. Regardless, the Court has fully considered the motion, and, on reconsideration as discussed above, finds that that the motion should be denied on the merits. Simply striking Lask's motion would not be an effective sanction.

The Court instead finds that an appropriate sanction in the circumstances of this case is a monetary sanction pursuant to 28 U.S.C. § 1927 requiring Lask to pay Defendants as compensation for legal fees they expended in litigating the diversity issue that never should have been contested by Lask.[13] A fee award for sanctions must be "calibrated" to the legal expenditures that the litigation abuse occasioned. *Goodyear*, 581 U.S. at 108. In other words, a fee award imposed as a sanction is limited to "only the

---

[13] The Supreme Court has expressed a preference for awarding sanctions pursuant to statute or the Federal Rules of Evidence rather than the Court's inherent power. "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal Rules of Civil Procedure or a specific statute], the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers,* 501 U.S. at 50. Here, the recommended sanction is available pursuant to both statute – i.e., 28 U.S.C. § 1927 – and  the Court's inherent power. *See Tedesco v. Mishkin*, 629 F. Supp. 1474, 1485 (S.D.N.Y. 1986) (sanctioning lawyer as both lawyer and party-litigant and stating: "This court bears the responsibility for the supervision of the attorneys appearing before it. … This responsibility carries with it the inherent power to impose monetary sanctions against members of its Bar for misconduct.") (citations omitted).

portion of [the non-sanctioned party]'s fees that [they] would not have paid but for the [sanctioned attorney's] misconduct." *Id.* at 109 (internal quotation marks and citation omitted). That said, "this standard does not require precise accounting. Instead, '[t]he essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Liebowitz v. Bandshell Artist Management*, 6 F.4th 267, 288 (2d Cir. 2021) (quoting *Goodyear*, 581 U.S. at 110).

Work performed by Defendants due to Lask's dissembling about her citizenship encompasses the following in part or in whole: (1) the portion of Defendants' brief opposing Lask's motion to remand addressing the argument that Defendants had not sufficiently demonstrated diversity of the parties; (2) Defendants' objections to the R&R; (3) Defendants' motion for reconsideration, which was premised on the newly discovered evidence of Lask's Verified Complaint in the EDNY Action; (4) Defendants' opposition to Lask's motion for fees and costs of successfully moving to remand; and (5) Defendants' cross-motion for sanctions. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 148–49 (2d Cir. 2012) (upholding imposition of fees for litigation of sanctions motion pursuant to § 1927 and inherent powers).

Only partial compensation is warranted, however, because Defendants also unnecessarily multiplied proceedings, although on a lesser scale than Lask, and skirted a court order. *See Hong*, 2024 WL 3824394, at *20 (reducing fee award to account not only for excess hours billed and unreasonable rates, but also because "Defendants themselves did much to multiply costs in this case"); *Novelty Textile Mills*, 136 F.R.D. at 76 (in awarding sanctions pursuant to § 1927, "[t]he court is not required to award the full amount of the excess expenses"). Specifically, Defendants filed largely redundant

motions for reconsideration (a motion to modify and amend pursuant to Fed. R. Civ. P. 60(b)(2), followed by a "motion for relief" from the R&R pursuant to Rule 59(e) & 60(b)(2)); sought reconsideration under rules that did not apply (e.g., Rules 59 and 60(b)(2)); and attempted to evade the page limit of seven pages for a supplemental reply brief by filing 13 pages of argument spread across a 7-page brief and a 6-page affidavit.  None of that conduct involved the dissembling that characterizes Lask's conduct.  But Defendants should not be rewarded by payment of all their fees incurred due to Lask's misconduct when Defendants also needlessly compounded proceedings to some extent.

In order to determine the amount of the sanction award, Defendants will need to submit a proper fee application.

## Conclusion

1.    Plaintiff's motion to strike is GRANTED IN PART and DENIED IN PART as set forth above.

2.    Defendants' motion for reconsideration is GRANTED.

3.    Plaintiff's motion to remand should be DENIED.

4.    Plaintiff's motion for fees and costs pursuant to 28 U.S.C. § 1447(c) should be DENIED.

5.    Defendants' motion for sanctions against Plaintiff should be GRANTED as set forth above, and Defendants should be directed to submit a corresponding fee application.

The Clerk of Court is respectfully directed to terminate the letter motions at Dkts. 34, 53, and 54.

SO ORDERED,
AND RESPECTFULLY SUBMITTED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: May 6, 2025
      New York, New York

Copies transmitted this date to all counsel of record.