```
┌──────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED:___9/24/2025___       │
└──────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUSAN LASK,

                     Plaintiff,

          -against-

MARGARET RHEE-KARN, et al.,

                     Defendants.

24-CV-02666 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

## INTRODUCTION

Before the Court is the May 6, 2025 Report and Recommendation of Magistrate Judge Robert Lehrburger. Dkt. No. 83 ("R&R" or "Second R&R"). Judge Lehrburger issued the R&R upon reconsideration of his prior Report and Recommendation issued on September 3, 2024, which recommended that the Court grant the motion by Plaintiff Susan Lask ("Lask") to remand this case to New York State court. *See* Dkt. No. 28 ("First R&R"). In light of new evidence, Judge Lehrburger's Second R&R recommends that the Court (1) deny Lask's motion to remand and (2) grant the cross-motion by Defendants Douglas R. Dollinger and Margaret Rhee-Karn for sanctions against Lask for deceiving the Court as to her domicile. For the reasons that follow, the Court adopts the R&R, denies Lask's motion to remand, and grants Defendants' motion for sanctions.

## FACTS & PROCEDURAL BACKGROUND

The Court incorporates by reference the summary of the facts provided in the First R&R and the Second R&R. Lask commenced this action in New York State court on February 2, 2024, asserting claims for libel, intentional interference with prospective economic relations, violation of Judiciary Law § 487, and aiding and abetting civil conspiracy against Rhee-Karn

(her former client) and Dollinger (Rhee-Karn's attorney). First R&R at 1. Dollinger and Rhee-Karn refused to voluntarily accept service of the Summons and Notice by email, so Lask mailed the documents to their respective addresses and attempted to serve them personally. *Id.* at 3.

### A. Service of the Notice and Summons

"[A] process server named James Predmore attempted to serve Dollinger at his last known place of business, 570 County Route 49, Middletown, New York." *Id.* After making unsuccessful attempts at service on March 28, 2024 at 2:47 p.m. and 8:17 p.m., and on March 29, 2024 at 1:59 p.m., Predmore affixed the Summons and Notice to the door of the business address. *Id.* Dollinger maintains that he was sick at home when Predmore made each attempt. *Id.*

A process server named Beth Brice attempted to serve Rhee-Karn at her home address, 402 East 90th Street, New York, New Yok. *Id.* at 4. Brice entered the building's lobby on the morning of April 2, 2024, and encountered a doorman named Carlos Herrera. *Id.* Herrera called Rhee-Karn on the lobby telephone, who instructed him to not let Brice proceed into the building. *Id.* Brice placed on the lobby desk an envelope containing the Summons and Notice and then left the building, believing service to have been effected. *Id.* Rhee-Karn never received the documents. *Id.* at 5. The parties dispute whether Brice informed Herrara that the envelope contained legal documents that were to be delivered to Rhee-Karn.

### B. Removal and Motion to Remand

Defendants removed the action to this Court on April 9, 2024, asserting federal subject matter jurisdiction based on diversity. Dkt. No. 1. The Notice of Removal states that Dollinger and Rhee-Karn are both citizens of New York and that Lask is a citizen of either New Jersey or Florida who has admitted in court filings that she is not a citizen of New York. *Id.* at 3. Lask moved to remand the case to state court on May 10, 2024, arguing that Defendants had not met

their burden to establish diversity of citizenship and that as citizens of New York, they are barred under the Forum Defendant Rule from removing the case from New York State court. *See generally* Dkt. No. 17.

This Court referred Lask's motion to Judge Lehrburger for a report and recommendation. *See* Dkt. No. 27. In the First R&R, issued on September 3, 2024, Judge Lehrburger agreed with Lask that Defendants failed to meet their burden to establish diversity of citizenship. First R&R at 14. Specifically, the First R&R noted that Defendants had presented no evidence to demonstrate that Lask was a citizen of Florida or New Jersey. *Id.* Likewise, their allegation that Lask was *not* a citizen of New York was unsupported, and even if it was, it could not establish diversity jurisdiction by itself. *Id.*

### C. Revelation of Lask's Domicile and Reconsideration of the Motion to Remand

On September 7, 2024, just days after the First R&R was issued, Defendants learned of a case in the Eastern District of New York in which Lask was the plaintiff (the "E.D.N.Y. Action"). Second R&R at 8. In the Verified Complaint in that action, filed by Lask on July 9, 2024, Lask avowed that she was a "natural person domiciled in the state of Florida" at all relevant times, extending back to January 2023. *See Lask v. Fallon*, No. 24-CV-04751, Dkt. No. 1 (E.D.N.Y. July 9, 2024). In other words, while Lask was litigating her motion for remand in this case, she admitted in another case that she was domiciled in Florida and did not reveal that fact either to Defendants or to Judge Lehrburger. On September 9, 2024, just six days after Judge Lehrburger recommended granting Lask's motion for remand based on the absence of evidence of her true domicile, Lask filed an amended complaint in the E.D.N.Y. Action. *See Lask*, No. 24-CV-04751, Dkt. No. 7. The amended complaint omits the reference to Florida and instead vaguely states that Lask is "domiciled out of state." *Id.* at 2. Defendants thereafter

moved for Judge Lehrburger to reconsider the First R&R based on new evidence and moved for sanctions against Lask for concealing her state of citizenship.  Dkt. Nos. 32, 34.

On February 19, 2025, Judge Lehrburger ordered Lask to disclose her citizenship pursuant to Rule 7.1(a)(2) of the Federal Rules of Civil Procedure.  Dkt. No. 56.  On February 28, 2025, Lask filed a disclosure statement, but instead of stating her citizenship, she noted only that she "was not a domicile of New York."  Dkt. No. 62.  Judge Lehrburger ordered her to file an amended disclosure statement affirmatively stating her citizenship, as required by his prior order and by Rule 7.1(a)(2).  Dkt. No. 63.  Lask complied on March 6, 2025, finally admitting that she was a citizen of Florida at all relevant times.  Dkt. No. 64.

After Lask admitted her domicile, other jurisdictional questions remained.  Judge Lehrburger held an evidentiary hearing on April 17, 2025, principally to determine whether Defendants were properly served with the underlying state action.  *See* Dkt. No. 81 ("Hearing Tr.").  Three witnesses testified: (1) Brice, the process server who attempted service on Rhee-Karn; (2) Herrera, the doorman who spoke to Brice at Rhee-Karn's apartment building; and (3) Rhee-Karn herself.  Second R&R at 30.  The key issue was whether Brice informed Herrera that the envelope being left at the lobby desk contained legal documents for Rhee-Karn.  On that issue, Brice's testimony conflicted with that of Rhee-Karn and Herrera.  *Id.* at 30–32.

On May 6, 2025, Judge Lehrburger granted the motion for reconsideration and simultaneously issued the Second R&R recommending that the Court deny Lask's motion for remand and grant Defendants' cross-motion for sanctions.  Dkt. No. 83.  Lask made certain filings best construed as a motion for reconsideration of the Second R&R, Dkt. No. 88, and Judge Lehrburger denied that motion on June 5, 2025, Dkt. No. 92.  Lask filed objections to the

R&R on June 16, 2025,[1]  Dkt. No. 95 ("Objections" or "Obj."), to which Defendants filed a

response on June 23, 2025, Dkt. No. 96-1 ("Obj. Resp.").  On June 25, 2025, Lask requested oral

argument and an evidentiary hearing, largely repeating the arguments from her Objections.  Dkt.

No. 99.

## DISCUSSION

## I.    LEGAL STANDARD

In reviewing a Report and Recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1)(C).  When specific objections are made, "[t]he district judge must determine

de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed.

R. Civ. P. 72(b)(3).  "To accept those portions of the report to which no timely objection has

been made, 'a district court need only satisfy itself that there is no clear error on the face of the

record.'"  *King v. Greiner*, No. 02-CV-05810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8,

2009) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003));

*see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (same).

Where the objecting party makes only conclusory or general objections, or simply

reiterates the original arguments, the court will review the report and recommendation strictly for

clear error.  *See Dickerson v. Conway*, No. 08-CV-08024 (PAE), 2013 WL 3199094, at *1

(S.D.N.Y. June 25, 2013); *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting

cases).  "Courts generally do not consider new evidence raised in objections to a magistrate

judge's report and recommendation."  *Tavares v. City of New York*, No. 08-CV-03782 (PAE),

---

[1] After receiving multiple extensions of the deadline to object to the R&R, Plaintiff filed her
objections one day late.  *See* Dkt. Nos. 87, 91, 94, 95.  Nevertheless, the Court will consider the
objections as if timely made.

2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011). "[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Layne v. Capra*, No. 17-CV-06736 (AT), 2018 WL 5255171, at *1 (S.D.N.Y. Oct. 22, 2018) (quoting *Razzoli v. Fed. Bureau of Prisons*, 12-CV-03774 (LAP), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014)).

## II.    THE MOTION TO REMAND IS DENIED

### A.  Standard for Removal and Remand

Under the federal removal statute, a defendant may "remove an action to the United States District Court in 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1441(a)). The procedure for removal of civil actions is set forth in 28 U.S.C. § 1446. In relevant part, the statute requires the defendant to file the notice of removal "within [thirty] days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Within thirty days after the filing of the notice of removal in federal court, a plaintiff may move to remand the case to state court. 28 U.S.C. § 1447(c).

On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Emps.' Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (citing authority omitted). Where, as here, a defendant removes a case based on diversity jurisdiction, the defendant bears the burden of establishing that the requirements of diversity jurisdiction have been met. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). Pursuant to 28 U.S.C. § 1332(a), the removing party must establish that: (1) the amount in controversy exceeds the $75,000 jurisdictional threshold, exclusive of costs and interest; and (2)

there is complete diversity of citizenship between all plaintiffs and all defendants.  *Id.*  The

burden for demonstrating complete diversity is a preponderance of the evidence.  *Catlin Ins. Co.*

*v. Sentinel Ins. Co., Ltd.*, No. 23-CV-05355 (VSB), 2024 WL 3445057, at *2 (S.D.N.Y. July 17,

2024).

### B.  The Requirements of Diversity Jurisdiction Are Satisfied

Defendants have met their burden to demonstrate complete diversity of the parties and

the requisite amount in controversy.  Lask does not object to Judge Lehrburger's conclusion that

the amount in controversy exceeds $75,000 or that Dollinger and Rhee-Karn are citizens of New

York.  *See* First R&R at 2, 10.  And there is no present dispute that Lask is a citizen of Florida.

*See* Dkt. No. 64.

### C.  The Forum Defendant Rule Does Not Apply

Ordinarily, a defendant may not rely on diversity jurisdiction to remove an action if the

defendant is a citizen of the state in which the action was brought.  *See* 28 U.S.C. § 1441(b)(2).

The so-called "Forum Defendant Rule" applies where "any of the parties in interest properly

joined and *served* as defendants" is a citizen of the forum.  *Id.* (emphasis added).  The Second

Circuit has held that Section 1441(b)(2), by its text, is inapplicable until a home-state defendant

has been served in accordance with state law.  *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d

699, 705 (2d Cir. 2019).  Thus, however arbitrary it may seem, an in-state defendant may side-

step the Forum Defendant Rule by removing the case before being served, a process known as

"snap removal."  *Papa v. Computacenter United States Inc.*, No. 25-CV-03788 (DLC), 2025 WL

2081555, at *1 n.1 (S.D.N.Y. July 24, 2025).

Because Defendants are citizens of New York, they undeniably would be barred from

removing the case unless the snap removal exception applies.  Thus, the question is whether

Defendants removed the case before being served.  Here, they necessarily removed the case before being served—because they were never properly served in the first place.

### 1.    Service on Dollinger Was Not Proper

Applicable New York law provides that individuals may be served by delivering a summons to the person to be served, or by delivering a summons to a suitable person as defined by statute, along with mailing the summons to the person's last known residence or actual place of business.  C.P.L.R. § 308(1)–(2).  If neither of these methods of personal service is possible, the process server may use "nail and mail" service, which involves affixing the summons to the place of business or residence of the person to be served and mailing the summons to that individual.  *Id.* § 308(4).

"Nail and mail" service is permitted only if personal service cannot be accomplished "with due diligence."  *Id.*  "The due diligence requirement of C.P.L.R. 308(4) should be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received."  *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (quoting *Moran v. Harting*, 212 A.D.2d 517, 622 N.Y.S.2d 121, 121 (1995)).  "Although New York has not formulated a hard and fast rule for what constitutes a showing of due diligence, case law has shaped a rough standard."  *United States v. Veeraswamy*, 765 F. Supp. 3d 168, 192 (E.D.N.Y. 2025) (internal references omitted).  Courts make the due diligence determination "on a case by case basis after considering the totality of the circumstances," with emphasis on the "quality" of the process server's efforts.  *Id.* (internal references omitted).  New York courts have generally required "approximately three attempts at service, optimally on non-consecutive days."  *Weifang Xinli Plastic Prods. v. JBM Trading Inc.*, No. 11-CV-02710 (WFK) (LB), 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014), *aff'd sub nom. Weifang Xinli Plastic Prods. Co. v. JBM Trading Inc.*, 583 F. App'x 24 (2d Cir. 2014)).  The attempts should be made "during times when the

8

defendant could be reasonably expected to be found at their actual place of business, dwelling place, or usual place of abode." *Veeraswamy*, 765 F. Supp. 3d at 192 (internal references omitted); *see also Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 676 (S.D.N.Y. 2003) (noting that courts examine whether the process server "attempted service during various days and times—before and after working hours, weekdays and weekends or holidays—when defendant may be reasonably expected to be found at home").

New York law is not wholly consistent on the question of whether service must be attempted with due diligence at both business and residential locations, but the Second Circuit has noted that "[t]here is substantial authority for the proposition that three attempts at residential service do not satisfy the 'due diligence' requirement where the process-server made no attempt to serve the defendant at his actual place of business, in particular where the place of business was known." *Toussaint*, 70 F. App'x at 14. Thus, "[i]n considering whether the 'due diligence' requirement has been met, New York courts frequently inquire as to whether a plaintiff attempted service at both the defendant's residence and the defendant's place of employment." *Jordan v. Pierre*, No. 18-CV-08528 (JGK), 2019 WL 2461721, at *1 (S.D.N.Y. May 28, 2019).

Considering the totality of the circumstances, the Court agrees with Judge Lehrburger that the quality of the attempts at service on Dollinger fell short of due diligence. A combination of deficiencies compels that finding. Most significantly, the process server attempted service at Dollinger's business address only. While there is no strict rule that service must be attempted at the defendant's residence, the failure to do so here is a glaring omission considering that, after finding himself unable to ascertain whether Dollinger was located at the business premises, the process server did not check the second address (located in the same town) that was listed on the summons as belonging to Dollinger, much less attempt effective service there. *See* Dkt. No. 1-1;

Second R&R at 25–26 (describing deficiencies regarding the attempts as serving Dollinger); Dkt. No. 92 at 5–6; *Joe Hand Promotions, Inc. v. Necessary Studios, Inc.*, No. 21-CV-5551 (LDH) (RER), 2022 WL 18858972, at \*5 (E.D.N.Y. Dec. 5, 2022), *report and recommendation adopted*, Order Adopting R. & R., *Joe Hand Promotions, Inc. v. Necessary Studios, Inc.*, No. 21-CV-5551 (LDH) (RER) (E.D.N.Y. Dec. 12, 2022) (finding improper service where "the affidavit contains no indication that the process server attempted to ascertain [Defendant's] residential address to serve him at that location, and reflects no inquiries or attempts to otherwise ascertain [Defendant's] whereabouts."). Combined with the fact that service was attempted on two consecutive days at a pair of similar times, the circumstances show that the process server did not attempt service with due diligence before resorting to nail-and-mail service. Service on Dollinger was therefore improper.

### 2.    Service on Rhee-Karn Was Not Proper

Lask purportedly served Rhee-Karn by substitute service under C.P.L.R. § 308(2) by having a process server speak to the doorman at Rhee-Karn's apartment building and leave the relevant documents on the lobby desk. Section 308(2) provides in relevant part that summons "may be delivered 'within the state to a person of suitable age and discretion at the . . . dwelling place or usual place of abode of the person to be served and by . . . mailing the summons to the person to be served at his or her last known residence[.]'" *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 461 (E.D.N.Y. 2022). Pursuant to that provision, "New York law permits valid service by leaving a copy of the summons and complaint with a doorman at a defendant's residence or dwelling." *Weingeist v. Tropix Media & Ent.*, No. 20-CV-00275 (ER), 2022 WL 970589, at \*8 (S.D.N.Y. Mar. 30, 2022) (quoting *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014)). Where a doorman or other substitute person refuses to accept delivery, however, the summons may be left in their vicinity, "provided the process server informs the

person to whom delivery is being made that this is being done." *Bossuk v. Steinberg*, 58 N.Y.2d 916, 918 (1983).

Lask does not object to Judge Lehrburger's conclusion that service on Rhee-Karn was not effective unless Brice (the process server) apprised Herrera (the doorman) that she was serving legal papers. *See* Second R&R at 33; Obj. at 12–15. The Court finds no clear error in that conclusion and thus accepts it. Lask does, however, object to Judge Lehrburger's finding that Brice in fact failed to apprise Herrera that she was serving legal papers. In particular, she objects to Judge Lehrburger's credibility assessment of the witnesses at the April 17, 2025 evidentiary hearing, noting the Brice testified that she did inform Herrera of the nature of the documents. *See* Obj. at 12–15.

"The court need not conduct a *de novo* hearing" with respect to disputed factual findings by a magistrate judge. *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019) (citing *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980)). "Instead, it is sufficient that the court 'arrive at its own, independent conclusion' regarding those portions of the report to which objections are made." *Id.* (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985)). Upon reviewing the record, the Court finds that Brice did not tell Herrera that the documents she was leaving on the lobby desk were legal papers to be delivered to Rhee-Karn.

The testimony from the evidentiary hearing is not especially enlightening. Brice contradicted herself as to whether she informed Herrera that she was serving legal papers before Herrera called Rhee-Karn on the lobby phone. *Compare* Hearing Tr. 21:12–19, *with id.* 22:18–21. However, she consistently testified that she so informed Herrera before she left. *Id.* 16:14–15, 22:22–25. A key factual question is why the only contemporaneous evidence—Brice's affidavit of service, which states that Brice informed the doorman that she was leaving a "letter"

11

for Rhee-Karn—does not comport with Brice's testimony (even accepting that she later submitted an affirmation alongside Lask's motion to remand, stating that by "letter," she meant the Summons and Notice). Brice's only answer was "clerical error," which the Court finds to be a questionable explanation under the circumstances. Nevertheless, the Court is not inclined to entirely credit the testimony of Herrera, who, like Brice, had a limited recollection of the events, and who was arguably not a disinterested witness, owing to his close connection to Rhee-Karn (though the Court notes that Brice naturally has a parallel interest in representing that she correctly performed her job).

The most reliable evidence is the contemporaneous affidavit of service, particularly when compared with the competing—and at time internally inconsistent—statements of the witnesses. Nothing in the record persuasively demonstrates that the Court should disregard the affidavit of service, which does not indicate that Brice identified the envelope as containing legal papers. Accordingly, the Court agrees with Judge Lehrburger and finds that Lask did not effect service on Rhee-Karn.[2]

### D. Lask's Other Objections Are Unavailing

#### 1. Lask Misapprehends the 30-Day Removal Clock

Lask objects that removal was improper because Defendants filed their notice of removal before the 30-day removal clock was triggered. She is mistaken.

The removal statute provides in relevant part that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which

---

[2] The Court need not reach Judge Lehrburger's alternate finding that the Forum Defendant Rule would not apply because Defendants filed their notice of removal before service on them was "complete" within the meaning of New York law. R&R at 20–22.

such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If the case first becomes removable later, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § (b)(3). Because the original Summons with Notice did not establish Lask's domicile, and thus removability was not ascertainable from the face of that document, Lask argues that Defendants improperly filed their notice of removal before the "30-day removal period" began. Obj. at 5–6. Lask confuses a procedural issue—defendant's deadline to file a notice of removal—with the separate, substantive issue of whether a case is subject to removal.

The Second Circuit has made clear that the triggering of the removal clock and the removability of an action are not synonymous:

> The moment a case becomes removable and the moment the 30-day removal clock begins to run are not two sides of the same coin. Thus, even if a defendant could remove immediately upon the filing of a complaint because the case satisfies the requirements of federal subject matter jurisdiction, a complaint or other document from the plaintiff that does not explicitly convey the removability of a case does not trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3). That is, whether a basis for removal exists and whether removal is timely are two separate questions.

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 146 (2d Cir. 2014) (internal references omitted). As the Second Circuit explained, "[w]hether the jurisdictional prerequisites of 28 U.S.C. § 1332(d) are in fact met is a separate determination from whether removal is timely and often involves consideration of materials outside the state-court pleadings." *Id.* (internal references omitted). Thus, "[i]f a complaint is vague, indeterminate, or otherwise fails to convey these jurisdictional predicates, the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3) are not triggered, but the defendant is not necessarily prohibited from removing." *Id.* at 146–47. Lask's objection that Defendants were statutorily prohibited from filing their notice of

removal is therefore meritless.  Similarly meritless is Lask's related objection, essentially reversing her stance, which argues that the Court cannot permit Defendants to amend their notice of removal because the 30-day removal window has expired.  *See* Obj. at 9–10.  As Lask recognizes in her first argument, the 30-day window was never triggered by the Notice with Summons, so it certainly did not expire before Lask revealed her true domicile.

### 2.    The Order Pursuant to Rule 7.1 Was Proper

Lask objects that Judge Lehrburger's order requiring Lask to disclose her citizenship pursuant to Rule 7.1(a)(2) of the Federal Rules of Civil Procedure constituted impermissible *post hoc* discovery that "undermines the core principle that the burden rests entirely on the removing party" to establish diversity of citizenship.  Obj. at 6–8.  This objection also has no merit.

A new addition to the Federal Rules in 2022, Rule 7.1(a)(2) provides that "[i]n an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party . . . must . . . file a disclosure statement . . . [that] identif[ies] the citizenship of . . . every individual or entity whose citizenship is attributed to that party . . . when the action is . . . removed to federal court."  Fed. R. Civ. P. 7.1(a)(2).  Lask asserts that this disclosure requirement does not apply to individual parties since "Rule 7.1 is administrative, designed to pierce through business structures like corporations, LLCs or trusts to assist with judicial conflict checks of unknown entities to determine recusal."  Obj. at 8.  But Lask conflates Rule 7.1(a)(2) with the older, more familiar Rule 7.1(a)(1).  Her confusion is evidenced by her reliance on an authority that predates Rule 7.1(a)(2) by 17 years.  *See id.* (citing *Ha v. Deutsche Bank N.J. Servs., Inc.*, No. 03-CV-08180 (KMW) (RLE), 2005 WL 589408 (S.D.N.Y. Mar. 11, 2005) for the proposition that Rule 7.1(a)(2) applies only to business entities).

As Lask notes, the disclosure statement required by Rule 7.1(a)(1) is commonly known as a Corporation Disclosure Statement.  By its terms, Rule 7.1(a)(1)—which is specifically titled

"Nongovernmental Corporations"—applies only to corporate parties. *See* Fed. R. Civ. P. 7.1(a)(1) ("A nongovernmental corporate party or a nongovernmental corporation that seeks to intervene must file a statement . . . ."). But Rule 7.1(a)(2) —which is titled "Parties or Intervenors in a Diversity Case"—provides no such indication that the disclosure requirement applies only to corporate entities. *See* Fed. R. Civ. P. 7.1(a)(2) (prescribing that "a party or intervenor must . . . file a disclosure statement" in diversity cases). Indeed, courts in this Circuit have applied Rule 7.1(a)(2) to individual litigants. *See, e.g., Gershowitz v. Griv,* No. 24-CV-01915 (PAE) (OTW), 2025 WL 2170773, at *2 (S.D.N.Y. July 31, 2025); *Pucha v. Peters*, No. 23-CV-04113 (DLI) (SJB), 2023 WL 6121797, at *3 (E.D.N.Y. Sept. 19, 2023). Thus, not only was it proper for Judge Lehrburger to order Lask to disclose her citizenship, Lask should have done so on her own when the case was removed. The Rule "is designed to facilitate an early and accurate determination of jurisdiction." Fed. R. Civ. P. 7.1(a)(2) advisory committee notes to 2022 amendments. That is, the Rule is designed to obviate exactly the sort of protracted litigation with which Lask has burdened this Court for over a year.

### 3. Defendants' Failure to Assert Insufficient Service of Process in Their Answer Does Not Deprive This Court of Jurisdiction

Lask argues that Defendants have admitted that service was proper because they omitted any objection to service in their Answer. *See* Obj. at 10. Indeed, Defendants filed an answer on April 15, 2024, in which they did not assert insufficient service of process as an affirmative defense. Dkt. No. 4. Lask correctly notes that failure to raise an affirmative defense generally waives that defense. *See Arch Ins. Co. v. Goldens Bridge Fire Dep't*, No. 16-CV-09921 (NSR), 2018 WL 1725225, at *3 (S.D.N.Y. Apr. 6, 2018). However, in the peculiar posture of this case, insufficient service of process is more than an affirmative defense or a matter of personal jurisdiction. It is a fact upon which the Court's assertion of subject matter jurisdiction rests. The

15

Court declines to interpret Defendant's waiver of a defense as an admission that bars this Court from finding the facts necessary to determine its jurisdiction over the case. "Ultimately . . . it is the federal court's responsibility to conduct its own investigation about whether subject matter jurisdiction exists in a given case." *New York v. Milchamot*, No. 24-CV-09296 (DEH), 2024 WL 5119327, at *1 (S.D.N.Y. Dec. 16, 2024).

Lask has not objected to any of Judge Lehrburger's other findings or conclusions on which the Court bases this opinion, and the Court finds no clear error in the R&R. Accordingly, the Court adopts the Second R&R as it applies to Lask's motion to remand.

## III.   THE CROSS-MOTION FOR SANCTIONS IS GRANTED

Determining whether sanctions are appropriate is "one of the most difficult and unenviable tasks for a court." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999). Courts must balance the goal of disciplining those "who harass their opponents and waste judicial resources by abusing the legal process" with the expectation that litigants and their attorneys will "pursue a claim zealously within the boundaries of the law and ethical rules." *Id.* Accordingly, the power to sanction "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Pursuant to 28 U.S.C. § 1927, a court may impose sanctions on an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Independently, Courts also have the inherent power to sanction a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Doe v. 239 Park Ave. S. Assocs., LLC*, 2022 WL 4592713, at *8 (S.D.N.Y. Sept. 30, 2022) (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)). The standard for imposing sanctions under Section 1927 and the Court's inherent authority are essentially the same. "In practice, 'the only meaningful

16

difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986)). In deciding a motion for sanctions under either authority, the Court must make any findings "with reasonable specificity in terms of the perceived misconduct and the sanctioning authority." *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996) (citing authority omitted).

The test for sanctions pursuant to both Section 1927 and inherent powers requires both a lack of merit and bad faith. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). "The bad faith requirement is a high bar to satisfy." *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 483 (S.D.N.Y. 2018) (citing *Revson*, 221 F.3d at 77–78). "To make a finding of bad faith, a court must (1) find that the challenged actions were taken for improper purposes, such as harassment or delay; and (2) provide a high degree of specificity in the factual findings." *Id.* (citing *Oliveri*, 803 F.2d at 1272). As set forth in detail in the R&R, Lask's conduct with respect to the diversity allegations cannot be justified by zealous advocacy.

Lack of merit is satisfied. Lask challenged diversity of citizenship in this case, knowing full well that the parties were in fact completely diverse, which significantly extended litigation over an issue that should have been easily resolved by disclosure. Lask argues in her objections that she never claimed that diversity did not exist, only that Defendants had not met their burden to show that it did. As Lask endlessly repeats in her objections, the party seeking removal bears the burden of showing diversity jurisdiction exists. *See, e.g.*, Obj. at 18–20. Thus, Lask was

17

entitled to make a good-faith legal challenge to the sufficiency of Defendants' allegations, independent of whether she challenged any fact of citizenship. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("It is well ingrained in the law that subject-matter jurisdiction can be called into question *either* by challenging the sufficiency of the allegation *or* by challenging the accuracy of the jurisdictional facts alleged." (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, Inc., 484 U.S. 49, 68 (1987) (Scalia, J., concurring in part and concurring in the judgment)).

But that is not what Lask did. Rather, she skirted her obligations in an attempt to hamstring the Court from properly asserting its jurisdiction. Of the many jurisdictional challenges available to a litigant, the one advanced by Lask could have succeeded only if she never disclosed her citizenship. Of course, she knew her citizenship, and she had a duty to disclose it (and indeed knew that she had already disclosed it in a pending action in a neighboring district). She cannot flout Rule 7.1(a)(2) and then ground her position upon her own disobedience. Moreover, her argument that Judge Lehrburger misapplied the Defendants' burden to allege citizenship ignores the clear dictates of Rule 7.1(a)(2). *See Pund v. St. Francis Coll.*, No. 23-CV-01498 (HG), Dkt. No. 22 (E.D.N.Y. July 28, 2023) (ordering the defendants in a diversity action to file Rule 7.1(a)(2) disclosure statements where the plaintiff insufficiently alleged their citizenship); *Del Mar TIC I, LLC v. Bancorp Bank*, No. 23-CV-08999 (JLR), 2023 WL 6811776, at *1 (S.D.N.Y. Oct. 16, 2023) (ordering the plaintiff, after removal of its case to federal court, to file a Rule 7.1(a)(2) disclosure statement because its citizenship could not be ascertained by the defendants).

Bad faith is also satisfied. Even if the Court credits that Lask's original motion to remand was within the bounds of reasonableness (although she was well-aware that diversity

existed), the aura of bad faith becomes unmistakable when examining Lask's actions after that motion was successful. Lask never disclosed her E.D.N.Y. complaint, in which she had asserted her Florida citizenship, to either Judge Lehrburger or the Defendants. Mere days after Judge Lehrburger issued the First R&R, Lask amended her E.D.N.Y. complaint to remove a statement affirming Florida citizenship, substituting in its place a vague statement that she "was not domiciled in New York." Lask also side-stepped Judge Lehrburger's direct order to disclose her citizenship, again identifying only where she was *not* domiciled. *See* Dkt. No. 62. It is impossible to ignore the causal link in these actions, when the First R&R identified precisely that sort of "negative fact" as one that could be safely admitted without triggering diversity jurisdiction. First R&R at 12. Lask's attempts to thwart the Court's jurisdiction, which persisted even after Judge Lehrburger lawfully compelled her to disclose her citizenship, were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Enmon*, 675 F.3d at 143.

The sworn declarations submitted in support of Lask's objections attempt to explain away this conduct. Lask avers that she moved to Florida in 2020 without intending to "remain there permanently"[3] and that she "secured a residence in New York" by April 2024 but "never physically moved into the New York residence due to unexpected circumstances that arose

---

[3] To the extent that Plaintiff suggests she never established domicile in Florida (which the Court does not presume given the direct contradiction with Plaintiff's signed disclosure statement), the Court notes that "although intent to remain in the state is a key element of demonstrating a change of domicile, the person need not have the affirmative intent to remain there *permanently*." *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 96 (E.D.N.Y. 2019) (quoting *Hidalgo v. City of New York*, No. 14-CV-2282, 2015 WL 1729811, at *2 (S.D.N.Y. Apr. 14, 2015)) (emphasis added); *see also Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 351 (S.D.N.Y. 2003) ("The second element [requiring intent to remain indefinitely] does not require that the persons have an affirmative intent to remain permanently in the state, but merely that he has no present intent to move to another state.").

later." Dkt. No. 95-1 ("Lask Decl.") ¶¶ 1–5; *see also* Dkt No. 95-2. Lask states that when she

commenced the E.D.N.Y. Action on July 9, 2024, her complaint "reflected Florida as [her]

domicile as [she] was still there despite [her] trying to move." Lask Decl. ¶ 8. When she filed

her amended complaint on September 7, 2024, she "updated [her] domicile by removing Florida

to reflect the fact that [she] was no longer there because [she] permanently moved from Florida

on August 30, 2024."

Lask's declaration is perplexing, and the Court notes the convenience of the excuses that

it offers. It is true that the amended complaint contains significant substantive changes

(enlarging the pleading from 6 pages to 33 pages), which somewhat weakens the inference that

Lask amended the complaint *solely* to conceal her domicile from Judge Lehrburger and

Defendants in this action. But Lask fails to explain why it was proper to update her domicile in

the amended complaint at all. Although she had moved out of Florida by the time of her

amendment, her domicile at the time she filed the original complaint remained controlling. *See*

*LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2d Cir. 2001) (holding that, for the purposes of

assessing diversity jurisdiction when the plaintiff has amended her complaint, the parties'

citizenship at the time of the filing of original complaint controls). In all, the declaration shows a

confused conception of domicile. It seems to imply the legally impossible conclusion that Lask

at times had no discernible domicile, and it makes the incredible statement that Lask had "a good

faith belief that New York was [her] domicile" in July 2024, despite the fact that she "never

physically moved" there (and despite the fact that she claimed Florida citizenship in her

E.D.N.Y. complaint filed that same month). *See Desmare v. United States*, 93 U.S. 605, 610

(1876) ("A person cannot be without a legal domicile somewhere."); *Palazzo ex rel. Delmage v.*

*Corio*, 232 F.3d 38, 42 (2d Cir. 2000) ("Domicile is established initially at birth and is presumed

to continue in the same place, absent sufficient evidence of a change."); *Gutierrez v. Fox*, 141 F.3d 425, 429 (2d Cir. 1998) ("[I]n order to change one's domicile, one must be present in the new domicile and have an intent to remain there indefinitely.").

On the one hand, Lask's misconceptions and mistakes could account for at least some of her conduct, and "negligence and/or incompetence is not the equivalent of acting in bad faith." *See Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-CV-01254 (SHS), 2024 WL 4250359, at *4 (S.D.N.Y. Sept. 20, 2024) (internal references omitted). On the other hand, the Court is asked to accept that Lask's various mistaken and inconsistent beliefs about her domicile have happened to flip and flop their way into a tangle of events that makes little sense but, at every turn, fortuitously explains away any suggestion of bad faith. Lask is both a party and an attorney, and, while everyone involved in a court matter is required to act in good faith, courts must hold lawyers to a higher standard than mere parties. Lask's conduct here is, at a minimum, regrettable. Worse, it is consistent with a broader pattern of conduct in this case, and in similar cases, that evinces a vexatious and undisciplined approach to the practice of law. Finally, while evaluating the facts and the law *de novo*, the Court gives significant weight to Judge Lehrburger's conclusions, as a first-hand observer of the entirety of this litigation, that Lask's conduct has been marked by evasiveness, dissembling, and a lack of candor. Such findings are often a matter of inference from the totality of the circumstances, as well as observations of demeanor and other markers of credibility. The finding of bad faith is well-supported by the facts in any event, and Lask's objections and supplemental declarations muddy the waters but do not overcome this well-founded conclusion. Accordingly, the Court adopts in full the portion of the R&R imposing sanctions, including that the amount of the sanction should be determined

after Defendants submit to Judge Lehrburger a fee application that comports with the directives at pages 43–45.

## CONCLUSION

For the foregoing reasons, Lask's motion to remand (Dkt. No. 15) is DENIED, and Defendants cross-motion for sanctions (Dkt. No. 32) is GRANTED.

Dated:  September 24, 2025
       New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge